8   677
43   214

### WILLIAM H. SAPP v. E. N. MORRILL.

1. TAX TITLES; *Assignment of Tax Certificates June 1st,* 1866; *When Tax Deed void on its face.* On the first day of June 1866 there was no authority for the assignment of a tax-sale certificate issued on a tax sale made prior to the year 1864, where the property sold had been bid off for the county, and still remained in the hands of the county; and a tax deed, showing that it was executed to the assignee thereof on such assignment of such certificate, is void upon its face.

2. STATUTES *relating to Tax Sales, Certificates, and Assignments, construed.* Section 9 of chapter 37 of the laws of 1864, and § 74 of chapter 118 of the laws of 1866, are prospective only in their operation, and relate solely to tax sales made after their passage. Section 113 of chapter 118 of the laws of 1866 operates only to save rights and powers, and not to create new rights and powers. Section 44 of chapter 197 of Comp. Laws was repealed March 5, 1864, without any saving clause, by § 12 of chapter 37 of the laws of 1864. Section 88 of chapter 118 of the laws of 1866 authorized assignments of tax-sale certificates *after* June 1, 1866, only. Section 43 of chapter 197 of Comp. Laws, and §§ 1, 2 and 3 of chapter 52 of the Comp. Laws, when considered together with § 44 of chapter 197 of Comp. Laws, did not authorize county commissioners to assign tax-sale certificates.

3. ———— When an act is not authorized to be done until *after* a certain day, it cannot be done on that day, nor until after the whole of that day has elapsed.

4. VOID TAX DEEDS; *Statute of Limitations.* The principle laid down in the case of *Shoat v. Walker,* 6 Kas., 65: "That the statute of limitations will not run in favor of a tax deed void upon its face, while the land intended to be conveyed remains vacant and unoccupied," reaffirmed. Nor will the statute of limitations run in favor of such a tax deed where the original owner of the land is in possession of and occupies the same.

5. ———— *Action to Quiet Title.* A void tax deed cannot draw after it, nor to it, the constructive possession of the land, although such land may be vacant and unoccupied; and whether the original owner, who is already in the constructive if not the actual possession of the land, and whose title is as good as it ever was, should be required to commence an action to quiet his title by having a tax deed void on its face adjudged and decreed to be void, *quære.*

6. PAYMENT OR TENDER *of Taxes, etc., before suit.* Since the Tax Law of 1868, (ch. 107, Gen. Stat.,) took effect the owner of land sold for taxes is not required to tender to the holder of a tax deed thereon, void upon its face, the tax, cost of sale, etc., before he can commence an action to quiet the title to his land as against said tax deed.

### *Error from Brown District Court.*

ACTION brought by *Morrill* to quiet his title to certain lands upon which he resided, of which he had peaceable possession, and to which he claimed the legal title. *Sapp* answered, claiming the paramount title in himself, alleging that the lands were duly assessed and taxed in 1861, and the taxes being unpaid the lands were sold in May 1862 at tax sale, the county of Brown being the purchaser; that on the 1st of June 1866 the county assigned the tax certificate to A. Webb & Co., to whom a tax deed was issued July 14th; that A. W. & Co. sold and conveyed the lands to M. T. Kenyon, and that Kenyon sold and conveyed them to *Sapp*—and that all of said deeds and conveyances were duly recorded, etc. The case was tried at the April Term, 1871. Defendant objected to the introduction of any testimony because it appeared from the pleadings that plaintiff had not tendered the taxes, costs, etc., as required by § 90 of the tax law of 1866, before commencing suit. Motion overruled. The plaintiff gave evidence of title by regular chain thereof from the government to himself. The defendant offered the tax deeds in evidence, which the court refused to receive, as being void on their face. Judgment in favor of *Morrill* quieting his title, and forever barring *Sapp*, his heirs and assigns, from setting up or claiming any estate, interest or title in or to said lands under or by virtue of said tax deeds. *Sapp* brings the case here for review.

*W. D. Webb*, for plaintiff in error.

*W. W. Guthrie*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action to quiet title to real property under section 594 of the civil code. The only question raised in the case are questions concerning the validity of two certain tax titles. As both tax titles are precisely alike, except that they are for different pieces of land, we shall hereafter speak of them only as one. The tax deed shows upon its face as follows: The land was taxed for the year 1861 and sold for the taxes May 8th 1862 to the county of Brown. On the 1st of June 1866 the county of Brown assigned the tax-sale certificate to A. Webb & Co.; and on the 14th of July 1866 the county clerk of Brown county executed the tax deed to said A. Webb & Co. The deed was recorded July 17th 1866. Is such a tax deed valid? The county clerk has no general authority to execute deeds for the county, or to transfer property of any kind from the county to individuals. Such general authority belongs only to the county commissioners. The clerk's authority is only special. His authority to execute tax deeds is only an authority to execute tax deeds to the owner and holder of the tax-sale certificate. The first question then, admitting everything else to be valid, is, whether A. Webb & Co. were, at the time the tax deed was executed, the owners and holders of the tax-sale certificate. In other words, had said tax-sale certificate been legally assigned to them? The tax deed does not show how nor by whom it was assigned. It simply shows that the certificate had been assigned by Brown county. But could Brown county at that time assign such a certificate? It of course could do so only through some officer or agent. But could it do so in that manner? and if so, through whom? This assignment was made June 1st 1866. Now it will be admitted that at that time the county clerk could assign tax-sale certificates issued on tax sales made in 1864, 1865, and 1866. (Laws of 1864, p.

1. Assignment of Tax Certificates.

73, § 9; Laws of 1866, p. 290, § 113, and page 277, § 74.) But could he assign tax-sale certificates issued on tax sales made prior to 1864? Section 113 of the tax law of 1866, which took effect March 20th 1866, did not confer authority upon the county clerk, or upon any other officer or agent, to make such assignment unless he had such authority prior to March 20th 1866. Said section acted only as a saving clause to save rights or powers which existed prior to its passage, and did not create rights or powers. Then had the county clerk, prior to March 20th 1866, authority to assign tax-sale certificates, issued on tax sales made prior to 1864? We think not. If he had any such authority it must be found in § 9 of the act of 1864 relating to county finances which reads as follows:

2. Statutes construed. Tax laws of 1864.

SEC. 9. When any land or town lots shall at any tax sale be bid off by the county treasurer, for the county, it shall be the duty of the county treasurer to enter the same on the book of tax sales, in the same manner as though such land or town lots were sold to other purchasers; and he shall number each tract of land or town lot consecutively, in like manner as though a certificate of sale had been made; but no certificate of sale shall be made, except as follows: Whenever any person shall pay into the county treasury a sum of money, or warrant of appropriate fund, or county orders, equal to the cost of redemption at that time, of any such tract of land or town lot, the county treasurer shall give such person a certificate, dated the day when it is issued, describing the land or town lot bid off for the county, the amount for which it was so bid off, the amount paid into the county treasury by such person for such tract of land or town lot, the time when the owner of such certificate will be entitled to a deed, and shall number said certificate to correspond with the number of the tract of land or town lot, as numbered in the book of tax sales; *which certificate*, before it shall be of any validity, shall be assigned to such person by the county clerk, who shall make an assignment on his duplicate book of tax sales; and such certificate, so assigned by the county clerk, shall vest all the interest of the county in or to such land or town lot, in such person; and such certificate shall be assignable to the same extent and in like manner as certificates given to purchasers at tax sales.

(Laws of 1864, p. 73, § 9; Laws of 1866, p. 277, § 74; Gen. Stat., p. 1048, § 91.)

Now it seems to us that said § 9 of the act of 1864 is prospective only in its operation, and relates solely to tax sales made subsequently to its passage. That the first part of the section, to the word "whenever," relates only to future sales we suppose is clear beyond all doubt; but whether the other part of the section relates only to future sales, is not so clear. The first part of the section we suppose is intended to be the broadest and most comprehensive, and to include within its scope all tax sales mentioned in the other part. The first part is intended to cover all tax sales made subsequently to its passage where the property is bid off for the county; the other part is intended to cover only such of the tax sales mentioned in the first part as shall by assignment of the certificate inure to the benefit of third persons who purchase the certificates. The latter part of the section does not, we suppose, include or refer to any tax sales not included in the first part, and neither does it include sales where the lands sold are redeemed before any assignment of the certificate is made, or where the certificate is never assigned but remains in the hands of the county. Under this section tax-sale certificates could be issued only under certain conditions. Under the former laws tax-sale certificates were issued in all cases, and immediately after the sale of the property, (Comp. Laws, 867, §§ 43, 44.) Will it be claimed that a second certificate could be issued on sales made prior to 1864? If so, what is to be done with the first certificate issued? Nothing can be found in the statutes providing what shall be done with it. It could not be assigned under said section nine. The only provision in § 9 authorizing the assignment of certificates is as follows: "*which certificate* before it shall be of any validity shall be assigned to *such person* by the county clerk," etc. Now this language clearly means that the certificate which it authorizes to be assigned shall be the certificate mentioned in § 9, and not some old certificate issued under some prior law. The words "which certificate" clearly mean the certificate before mentioned in that section; and the words "such person" clearly

43—8TH KAS.

mean the person before mentioned therein. But what kind of a certificate is previously mentioned in the section? Certainly not a certificate that had been issued before the section was passed by the legislature; nor even a certificate issued subsequently on some tax sale that had been made prior thereto. But it is a certificate issued on a tax sale made under the section itself, or rather after its passage. It is a certificate issued by the treasurer when any person shall pay into the county treasury a sum "equal to the cost of redemption at that time *of any such tract of land or town lot.*" What land or town lot does this language mean? Such of course as had been before mentioned in the section. And the only land or town lots previously mentioned in the section were such as the legislature contemplated would be subsequently sold to the county for delinquent taxes. Not a word is said in the whole section of any land or town lot that had been sold prior to the passage of such section. The conclusion, then, seems to be irresistible that this section relates only to tax sales and tax-sale certificates and assignments thereof made subsequently to its passage.

Prior to March 5th, 1864, the county treasurer had the power to assign tax-sale certificates: Comp. Laws, 867, § 44. But on that day the law under which he got his authority was repealed absolutely, and without any saving clause: Laws of 1864, p. 73, § 12; and hence since that time he has had no such power: *Shoat v. Walker*, 6 Kas., 65, 72, 73.

We are referred to the tax law of 1866 as giving authority to counties, through the county treasurer, or through him and the county clerk, to assign tax-sale certificates on sales made prior to the passage of the said act of 1864. The provision referred to reads as follows:

Tax law of 1866.

"Sec. 88. * * * Any person whose lands have, prior to the passage of this act, been sold for taxes to any county, and remain in the hands of said county, may, after the first day of June next, redeem the same by paying the principal, costs of sale, and ten per cent. penalty, or the county treasurer may transfer, in the manner provided in this act, the certificate of sale of said lands to any one who will pay all back tax, cost of

sale, and ten per cent. penalty." (Laws of 1866, p. 282, § 88; Gen. Stat., 1054, § 111.)

This act took effect March 20th, 1866. We suppose that there can be no doubt that the words, "after the first day of June next," apply as well to the assignment of the tax-sale certificate as to the redemption of the land from the taxes. Such is the natural import of the language used. But if not, then the certificate could be assigned as soon as the act took effect. This would give the speculator in the tax titles more than two months' advantage over the owner of the land. The speculator would have more than two months in which he could have the certificate assigned to himself before the owner of the land could redeem his land under the act. Can it be supposed that the legislature intended to give such a great advantage to the speculator over the owner of the land? We think not. And if not, then we suppose this act did not give 3. Words "on" power to any one to transfer or assign the tax-sale and "after" construed. certificate *on* the first day of June, 1866. *After* the first day of June does not mean *on* the first day of June. When a thing is not authorized to be done until after a particular day it cannot be done until after the whole of that day has elapsed: (*Judd v. Tarleton*, 10 Barb., 117.) This we suppose is self-evident.

We are also referred to sections 43 of the tax-law of 1860, (Comp. Laws, 867,) and to §§ 1, 2, and 3 of the act of 1860 relating to counties and county officers, (Comp. Laws, Tax Law of 409,) as giving authority to the county commissioners 1860. to assign tax-sale certificates belonging to the county. These sections are undoubtedly broad enough in their language to give just such power as is claimed, and would do so if a different intention had not elsewhere been expressed by the legislature. Section 44 of said tax law of 1860 reads as follows:

"SEC. 44. If any lands or town lots shall be bid off for the county the treasurer shall make a certificate to the county similar to that specified in the preceding section, which certificate *shall be assignable by the county treasurer* in like manner as those given to other purchasers; and such certificates shall be subject to purchase by any person offering to pay therefor a

sum equal to the cost of redemption at that time." (Comp. Laws, 867.)

This section was passed by the same legislature that passed said §§ 43 and 1, 2, and 3. It was passed at the same time and as a part of the same act with § 43, and was passed after, but only two days after, §§ 1, 2, and 3. Now as the legislature, by this section, seems to have given all power to the county treasurer to assign the tax-sale certificates, we think it appears by necessary and unavoidable implication that they did not intend to give the same power to the county commissioners. Afterward on the 5th of March 1864 when said § 44 was repealed the repealing thereof did not have the effect of enlarging the powers of the county commissioners, or enlarging the meaning of said §§ 43, and 1, 2, and 3. Those sections of course retained their precise original meaning. We suppose it would hardly come within the scope of legislative power under our constitution to enact laws except by positive enactments. It would hardly be within the power of the legislature to enact laws simply by repealing others. Under our constitution the repeal of a repealing statute would not revive the original act. (Art. 2, § 16, Const.)

We believe we have now passed over the entire field, and found that on the first day of June 1866 there was no power vested in any person or persons to assign tax-sale certificates on lands bid off for the county at a tax sale prior to 1864; and hence a tax deed showing that the certificate upon which it was executed was such a certificate, and assigned on that day, is void upon its face. This precise question was decided in the same way by the U. S. circuit court, Justice Miller presiding, at its May Term at Topeka in 1871, in the case of *Swope v. Saine*, 1 Dillon's C. C. Rep., 416.

We have already decided that a tax deed void upon its face will not of itself and alone cause the statute of limitations to run in its favor: *Shoat v. Walker*, 6 Kas., 65, 73, 74.

4. Void tax deeds; statute of limitations. In the words of that decision, "The statute of limitations will not run in favor of a tax deed, void upon its face, while the land intended to be conveyed by the tax deed

remains vacant and unoccupied." This decision we reaffirm.
And we would further say—as it seems from the record in this
case that the plaintiff was in possession of the property in con-
troversy at the commencement of this suit—that the statute of
limitations will not run in favor of such a tax deed where the
owner of the land is in possession of and occupies the same.

There would seem to be no reason why a void tax deed should
cause the statute of limitations to run in its favor. Does a
party holding such a deed constructively oust the original owner
by simply putting his deed on record, whether the original
owner be in the actual possession of the property covered by
the tax deed or not? A void tax deed cannot draw
after it, nor to it, the constructive possession of the
property, although the property may be vacant and unoccupied.
Then why should the original owner commence any action to
test the validity of the tax deed? He need not commence an
action for the recovery of his property, for he is already in the
constructive if not in the actual possession thereof; and his
title is as good as it ever was. He need not commence an
action to remove a supposed cloud from his title, for a deed
void upon its face is no cloud upon his title. He need not
commence an action to have the deed declared void, for the
deed itself upon its face furnishes sufficient evidence of that
fact, and about as good evidence as a record of a court declar-
ing the fact would be. Indeed, there would seem to be no
reason whatever in any case for the owner of the land to invoke
the interposition of a court of justice. The instrument itself
would always furnish sufficient evidence to defeat any claim set
up under it.

Another question is raised in this case. It is claimed that
the plaintiff did not tender the amount of the taxes, costs, etc.,
to the defendant as provided in § 11 of the tax law of March
6th 1862, (Comp. Laws, 880,) and § 90 of the tax
law of 1866. There are probably two or three reasons
why it was not necessary to make such a tender. First, this
does not seem to be the kind of action in which such a tender
was required. Second, both of said sections were repealed

before this suit was commenced: Laws of 1866, p. 291, § 117; Gen. Stat., 1063, § 147. This suit was commenced June 4th 1870. But it is claimed that said sections could not be repealed so as to affect the defendant, for to do this would disturb a vested right and impair the obligation of his contract. But we have already decided that the defendant did not by virtue of said assignment and tax deed obtain any rights to be disturbed, nor make any legal contract to be impaired. Third, it is not certain that said provision is constitutional; (*Weller v. St. Paul*, 5 Minn., 106;) though probably the weight of authority is that it is constitutional as applied to certain cases: *Wakeley v. Nicholas*, 16 Wis., 588; *Smith v. Smith*, 19 Wis., 615, 620. Upon this question however we express no opinion. The judgment of the court below is affirmed.

All the Justices concurring.