## E. N. MORRILL, *et al.*, v. J. C. DOUGLASS.

1. PLEADING AND PROOF; *What Evidence of Title admissible under Answer.*
   Where in an action to quiet title a petition is filed alleging among other things ownership and possession by the plaintiff, and the answer without any denial of the allegations of the petition only sets up a specific title, it is error to admit evidence of any other than the title pleaded; but where the answer contains, besides the plea of a specific title, a denial of the allegations of the petition, it is not error to admit in evidence a voluntary conveyance from the plaintiff, a sheriff's or a tax deed, or any other legal testimony tending to show that plaintiff is not the owner as alleged, whether specifically set up in the answer or not.

2. —————— *Where Proof fails to show Interest.* Where the testimony only shows that plaintiff has no title or possession, but fails to disclose any interest or title in the defendant, no affirmative relief can be granted the latter.

3. TAX DEED; *When not Void.* A tax deed which does not state the amount for which the sale-certificate was assigned by the county, but which gives the amount for which it was sold to the county, the date of such sale, and the date of the assignment, is not by reason of such omission void on its face.

4. —————— Nor is a tax deed void simply because it shows that it is made upon the consideration alone of one year's tax and interest.

5. ASSESSMENT-ROLL; *Separate Books.* An assessment-roll, otherwise regular, is not invalidated by the fact that it was returned and preserved in separate books for each township instead of in a single book for the county.

6. PUBLIC RECORDS; *When not Found; Presumption.* Where notices, affidavits, etc., are directed to be preserved in a particular office, a failure to find them there raises a presumption that no such documents ever existed; but this presumption is by no means conclusive.

7. TAX DEED; *Prima facie Evidence of Regularity.* A tax deed is made *prima facie* evidence of the regularity of all prior proceedings, therefore of the fact that all notices and affidavits required were duly given. The treasurer is required to file in the county clerk's office all notices, affidavits, and papers, in relation to tax sales. The sale in this case was for the taxes of 1862. The county clerk testified that he could not find certain notices in his office; that if they were in the office they should be in a certain bundle, which he produced, and in which they were not; that when he had first taken possession of the office he had sorted all the papers therein; that he could not swear that they were not in his office, and that when the papers of his office were kept in the old court house some of them were eaten up by rats. *Held,* that a finding of the district court, upon this testimony, in favor of the validity of the deed, so far as affected by these notices, would not be reversed in this court.

8. COUNTY COMMISSIONERS; *Contract in 1868 for certain Assignments Void.* In 1868 the county commissioners were not authorized to contract for the transfer and assignment of tax-sale certificates for lands struck off to the county at prior tax sales, and a contract therefor was *ultra vires* and void.

9. —————— Where the county commissioners assumed to make such a contract, by the terms of which some certificates were to be assigned for the amounts necessary to redeem the land, and others for a sum in gross, which was less than the amount requisite for redemption, and in pursuance of such assumed contract the treasurer and clerk assigned all the certificates named therein, and received pay accord-

ing to the terms of the contract, *held,* that such assignments were valid as to those certificates for which they received the legal pay, and that tax deeds based thereon were not thereby avoided.

### *Error from Jackson District Court.*

ACTION brought by *E. N. Morrill* and *W. W. Guthrie* as plaintiffs, to quiet title to the E.½ of S.E.¼ of sec. 26, township 6, range 12 east, and the W.½ of S.W.¼ of sec. 1, township 6, range 13 east, in Jackson county. The plaintiffs claimed to be the legal owners and in peaceable possession of said lands, and alleged that *Douglass*, the defendant, "sets up and claims an estate and interest in and to said premises adverse to the title of the plaintiffs, but that the same is null and void," and asking that said defendant's claim and title may be determined and adjudged to be null and void as against the title of the plaintiffs. The answer, and subsequent pleadings, are sufficiently stated in the opinion, *infra.* The action was tried at the April Term 1874 of the district court. The plaintiffs showed a regular chain of title, from the patent down, in themselves, and that the land was vacant. The defendant offered in evidence three tax deeds to show title in himself. Two of these deeds were dated September 8th 1868, one of them upon the sale of 1863 for taxes of 1862, the other upon the sale of 1864 for taxes of 1863. The other deed was dated January 30th 1872, issued on said sale of 1863 for the taxes of 1862, and was procured by defendant to cure some real or supposed defects in the former deed issued to him on that sale; (10 Kas., 377, 381.) It is this last tax deed which is commented upon and sustained by the court in the opinion, *infra.* Said deed is as follows:

"KNOW ALL MEN by these presents, that, whereas, the following described real property, viz.: N.E. qr. sec. 8, town 6, range 16; west ½ S.W. qr. sec. 9, town 6, range 16; [*here follow 50 other tracts, described in the same manner as the 2 tracts mentioned, and including the lands described in plaintiffs' petition:*] situate in the county of Jackson and state of Kansas, was subject to taxation for the year 1862; and whereas, the taxes assessed upon said real property for the year 1862 aforesaid remained due and unpaid at the date of the sale

hereinafter mentioned; and whereas, the treasurer of said county did on the 7th of May 1863, by virtue of authority in him vested by law, at an adjourned sale of the sale begun and publicly held on the first Tuesday of May 1863, expose separately and severally to public sale, at the county-seat in said county, in substantial conformity with all the requirements of the statute in such case made and provided, the real property above described, for the payment of taxes, interests and costs then due and unpaid upon said property; and whereas, at the time and place aforesaid the said real property above described could not be sold for the amount of said taxes, penalty, and charges thereon respectively, to any person or persons, in any parcel or parcels, at said public sale or any adjourned sale thereof, the whole of said lands above described were severally bid off by the county treasurer of Jackson county, state of Kansas, for the several sums of money, dollars and cents, respectively placed opposite each respective tract in schedule hereto attached and marked 'A,' being the whole amount of taxes, interest, and cost then due and remaining unpaid on each of several tracts of said real property respectively, for said county of Jackson in said state of Kansas, and which whole tracts respectively was in each case the least quantity bid for; and whereas, the county clerk of said Jackson county, state of Kansas, did on the 11th of May 1868, in consideration of the several sums of money, dollars and cents, taxes, interest and costs due respectively on said several tracts of land for the year 1862, paid into the county treasury of said county by John C. Douglass of the county of Leavenworth, and state of Kansas, duly assign the certificates of the sale of the property as aforesaid, and all the right, title and interest of said Jackson county to said property to said John C. Douglass; and whereas, the said county clerk did on the 11th of May 1868 duly assign the certificates of the sale of the property as aforesaid, and all the right, title and interest of said county of Jackson to said property, to John C. Douglass of the county of Leavenworth and state of Kansas:

SCHEDULE 'A,' ABOVE REFERRED TO:

N.E.¼ sec. 8, town 6, range 16, . . . . . . . . $4.80
W.½ S.W.¼ sec. 9, town 6, range 16, . . . . . . . $3.67
[*here follow, in like manner, the other 50 tracts first described, as above mentioned:*] and whereas, two years have elapsed since the date of said sale, and the said property has not been redeemed therefrom as provided by law:

"Now therefore I, E. D. ROSE, county clerk of the county aforesaid, for and in consideration of the sums of money, dollars and cents, set opposite to each tract of land respectively in said schedule 'A,' and being the taxes, cost and interest due on said land for the year 1862 to the treasurer as aforesaid, and by virtue of the statute in such case made and provided, have granted, bargained, and sold, and by these presents do grant, bargain, and sell unto the said John C. Douglass, his heirs and assigns, the real property last hereinbefore described, to have and to hold unto him the said John C. Douglass, his heirs and assigns forever, subject however to all rights of redemption provided by law.

"In witness whereof I, E. D. Rose, county clerk as aforesaid, by virtue of authority aforesaid, have hereunto subscribed my name and affixed the official seal of said county on the 30th day of January 1872.

[SEAL.]                    E. D. ROSE, *County Clerk.*"

This deed was duly acknowledged and certified, and recorded on said 30th of January 1872. The district court found that *Douglass* had the legal title to and was the owner in fee simple of the lands in controversy, and gave judgment decreeing that all title of the plaintiffs in said lands was null and void. The plaintiffs bring the case here on error.

*W. W. Guthrie,* and *John S. Hopkins,* for plaintiffs in error:

An assignee takes no greater rights than before existed in the county; (1 Kas., 455.) But taken independently, each tax deed is void upon its face as a title. Yet it is on the record, and is a cloud upon plaintiffs' title, and is evidence to extent of its recitals against defendant claiming under it, and is so pleaded; (9 Wis., 402, 410.)

When a deed has been made "on presentation to him of the certificate of sale," (§ 112, p. 1055 of Gen. Stat. of 1868,) the certificate becomes *functus officio,* and no longer the subject of presentation to the clerk, with whom since the first deed it has been filed. If he may legally take two deeds, he may take twenty; if at interval of four years, equally so of forty years. The land-owner finds on record a tax deed which he knows cannot affect his land, and on this he rests.

20—14 KAS.

He has a right to, and the tax-deed holder is estopped from denying his own act so long as it is unquestioned at least when its effect is to entrap the land-owner. (Blackw. Tax Titles, 311, 315.)

The tax deed of January 30th 1872, is for same tax and property as in No. 1. In one case it is stated as sold on May 5th, in other on 7th; in one case as assigned on May 18th, in other on May 11th, (which is right.) It does not, as required in statutory form, state the amount of the bid for each tract, or the sum paid for such assignment, or to whom paid, and is shown to be upon the consideration alone of one year's tax. Now while several tracts may be included in one deed, each separate requisite for a valid sale and conveyance can and must in each case be stated, as required in statutory form, or the deed is not *prima facie* evidence, by which the *onus probandi* is changed under rule of § 112, p. 1055, tax law of 1868. But if rightly admitted, the deed was avoided by evidence offered by plaintiff: 1st, The assessment-roll is not as required; 24 Ill., 221, 579; 12 Ill., 357. A county assessor was required to make out a "tax-roll" for his county, and return *a true copy* to the county clerk. Any number of fractions for the several cities and townships will not constitute that "tax-roll," or a true copy. (See §§ 17–22, p. 862, Comp. Laws of 1862.) 2d, The county clerk's office was made the depository of *all* evidence in reference to tax sales, etc. "When not there found the presumption arises that no such document has ever been in existence." 16 Mich., 135; 5 Gilm., 379. The county clerk appeared under subpœna *duces tecum*, and stated his inability to find any such notices or papers. How otherwise could plaintiff prove a negative? All these "affidavits, notices and papers in reference to such tax sale" are absolute prerequisites; 5 Minn., 105.

Sec. 112 of the tax law of 1868 does not make deed *prima facie* evidence of everything—only to extent as therein specially provided. Sec. 20, p. 862, Comp. Laws of 1862, required a step prior to assessment, and which the deed is not made evidence of; 24 Ill., 221, 579. The certificates

offered by defendant, as well as tax-sale book, show that the defendant had no interest in the certificates on which deed issued for ten days after time stated in deed. This variance would avoid the deed. But defendant's "lump trade" with the county commissioners for "all they had on hand," was neither authorized by law nor tolerable in good policy. The right to purchase was alone from the treasurer; the commissioners had no authority whatever in the premises. Defendant not only bought of the commissioners, but the record shows he bought on credit, on the 8th of July 1868, when the trade was finally concluded, but the certificates had been assigned two months before. He got 60 certificates, while only the cost of 25 was computed, and of the $14,000 one-twentieth part was not computed. By such unauthorized purchase and transfer Douglass obtained no legal ownership to *any of such certificates*. He was party to, if not a fraud, at least a violation of law, and will not be permitted to reap any advantages therefrom. The rule is *stricti juris*, rigidly applied. Such certificate is a "chose in action," and any remedy thereon is barred after five years.

*J. C. Douglass*, defendant in error, for himself. No brief on file.

The opinion of the court was delivered by

BREWER, J.: This case turns upon the validity of a tax deed. The district court found in favor of its validity. Three principal questions are presented on the record. It is claimed in the first place, that under the pleadings it was error to admit this deed in evidence; in the second place, that the deed was void on its face; and in the third place, that if not void on its face, it was shown to be void by the testimony *aliunde*. Of these in their order.

I. In reference to the first question the facts are these: The action was brought by plaintiffs below, who are plaintiffs

Statement
of facts.

in error, under § 594 of the code. They alleged that they were the owners and in possession of the premises in controversy, that defendant set up and claimed

an estate and interest therein adverse to theirs, but that the same was null and void. The answer first denied specifically the ownership and possession of plaintiffs, then set up a single tax deed, and closed with a plea of the statute of limitations. The deed set up in the answer was not the one afterward received in evidence and held valid. The latter was a subsequent deed given upon the same sale. The reply, which is very full, was obviously prepared on the supposition that all the tax deeds held 'by the defendant had' been specifically pleaded. While only one is set up in the answer, the reply frequently speaks of "each of said pretended deeds," and also alleges, in obvious reference to the deed held valid, "that such last pretended deed is null and void because executed upon the same pretended sale, and for the same pretended consideration, for which the said first described pretended deed was executed." It is apparent therefore that the plaintiffs were not surprised by the production of this second deed based upon the one sale. Was the deed improperly admitted in evidence? Counsel insists that defendant having plead the one deed, was limited in his evidence to that; that he had elected to rest his claims upon the one title, and had tendered an issue thereon. If the answer contained nothing but this single tax deed, there would be force in the argument. But it contains a specific denial of the plaintiffs' ownership, in language as full and satisfactory as the allegation of ownership in the petition. It thus tendered an issue upon that question, and upon such issue any evidence was competent which tended to show that the plaintiffs were not the owners. A voluntary conveyance from them, a sheriff's, or a tax deed, whether running to the defendant or not, was evidence tending to show that the plaintiffs were not the owners, and therefore tending to defeat their right to maintain any action. Of course, if the title ran to some third party, without subsequently passing to the defendant, it would furnish no basis for granting him affirmative relief—it would simply tend to defeat the plaintiffs' action. We do not mean to say that proof that plaintiffs' had no *title*, would necessarily defeat the action.

1. Admissibility of evidence; issue; surprise.

2. No interest, no affirmative relief.

Their possession, if actual possession is shown, gives them a right to have adverse claims thereto determined. *Branner v. Biglow*, 8 Kas., 496; *Giltenan v. Lemert*, 13 Kas., 476. But testimony tending to show that the plaintiffs had no title, as well as that tending to show that they had no possession, is competent; and if they had neither title nor possession they could maintain no action, even though defendant had no claim to the property. In other words, having no interest themselves, they could not litigate defendant's claims.

II. A second proposition is, that the deed is void on its face. It recites a sale to the county, and an assignment of the certificate to defendant. It embraces a large number of other tracts of land. The objections to it are thus stated by counsel:

"It does not, as required in statutory form, state the amount of the bid for each tract, or the sum paid for such assignment, or to whom paid, and is shown to be upon the consideration alone of one year's tax."

We think it does state the amount bid for each tract. It gives a table incorporated into the deed, and called schedule "A," in one column of which is the description of the property, and opposite each tract is placed a certain amount in dollars and cents; and it declares that the "lands above described were severally bid off by the county treasurer of Jackson county for the several sums of money, dollars and cents, respectively placed opposite each respective tract in schedule hereto attached and marked 'A,' being the whole amount of taxes, interest and cost then due and remaining unpaid on each several tract of said real property respectively." In reference to the sum paid for the assignment, and the party to whom it was paid, the deed reads thus:

*3. Tax deed; defective, not necessarily void.*

"And whereas, the county clerk of said Jackson county, state of Kansas, did, on the 11th of May 1868, in consideration of the several sums of money, dollars and cents, taxes, interest and costs due respectively on said several tracts of land for the year 1862, paid in to the county treasurer of said county," etc.

Now this describes the place of payment as required by statute, (Laws of 1866, p. 277, § 74,) and indicates with sufficient precision the amount paid. The amount for which it was struck off to the county being given, as well as the date of such sale, the date of the assignment, the amount of taxes, interest and costs then due, is a mere matter of calculation. It would be no more certain if the calculation had been made and the result stated in figures. It might disclose an error in the calculation, but would such an error vitiate the deed? *Bowman v. Cockrill,* 6 Kas., 325. It must be remarked, that the statutory form does not include any statement of the amount paid for an assignment, nor indeed does it seem to have been prepared with reference to a sale to the county and a subsequent assignment by it of the sale certificate: *Norton v. Friend,* 13 Kas., 532; *Magill v. Martin,* supra, 67. As to the

4. Only one year's tax recited.

last suggestion, that it appears "to be upon the consideration alone of one year's tax," we know of no reason why that is not sufficient consideration. The sale is made for the nonpayment of one year's tax; and if the owner of the land should see fit to pay the taxes of the subsequent years we do not see how that would invalidate the sale, or prevent a deed. If it did, a land-owner might with perfect safety omit the payment of his taxes every fourth year. We think therefore that the deed was *prima facie* valid, and properly received in evidence.

III. The remaining proposition of counsel is, that the deed was shown to be void by evidence *aliunde.* And under this

5. Assessment roll; separate books.

head it is insisted that the assessment-roll is not as required. Counsel for plaintiffs cite Comp. Laws of 1862, p. 862, § 21, "The assessor shall make a correct list of all the taxable property in his county, to be called a tax-roll." This, counsel insists, must be a single paper, or book—that a number of fractions for the several cities and townships will not constitute such roll. Here four separate books were produced, indorsed respectively "Assessment-Roll of Jefferson township, 1862," "Assessment-Roll of the Town of Holton, 1862," etc. In each was a certificate of the as-

sessor that such roll contained all the taxable property in such town or township; and it was also in testimony that the county was then divided into the three townships and one town, and that these four books embraced all the taxable property of the county. We fail to see anything in this to invalidate the assessment, when the entire county is assessed, and by the proper officer, and a proper authentication made of the assessment of each township, and all returned to the proper officer. Surely, an omission to fasten these several assessments together into one roll, or book, can have wrought no prejudice to anybody, or in any direction. The assessment was sufficient.

Again, the county clerk was called as a witness and testified that he was unable to find in his office any proofs of the notices required by sections 32, 36, 37, 38, and section 55 of the tax law of 1862; that if any such were in his office they ought to be in a certain bundle of papers, which he produced; that they were not in such bundle; that he could not say they were not in his office, but that if they were he had never seen them; and that when he first took possession of the office he had sorted over the files and papers, and placed them in proper packages, where they since had been kept, and that he was certain he had placed in the package produced all papers relating to such matters; that before the new court-house was built, and while in the old court-house, some papers had been eaten by rats. He was also asked whether bills had not been presented and paid by the county for the publication of such notices; but the court sustained an objection to such testimony. The notice required by section 32 is a notice of the amount of the different taxes on each hundred dollars' valuation, and also of the day on which the treasurer will attend in each township for the purpose of receiving taxes. This notice is required to be posted at each place of holding elections, and to be published for four weeks in some newspaper having circulation in the county. There is no express direction to any officer to take and preserve any proofs of the publication or

*6. Public records; presumption, when not to be found.*

posting of this notice. Sections 36, 37 and 38 require a no-
tice of the sale for taxes, which notice is to contain a list of
the property to be sold. Posting and publication are also
required of this notice. Affidavits of both such posting and
publication are specifically required to be made and preserved.
Section 55 provides for a notice of the expiration of the time
limited for redemption, which notice is to contain a list of the
unredeemed lands and lots, with the amount of taxes and in-
terest calculated to the last day of redemption. Publication
or posting is required of this notice, but there is no specific
direction to any one to take and preserve proofs thereof.
There is however in § 47 a general direction to the county
treasurer to "file with the county clerk all affidavits, notices
and papers in reference to such tax-sale, to be preserved by
him." Upon this two questions arise: First, Was the failure
to find these notices in the county clerk's office proof that
they never existed? If so, was the omission to give these
notices fatal to the validity of the sale and deed? We shall
rest our decision upon the answer to be given to the first
question. It is probably true, that when notices, affidavits,
etc., are directed to be preserved in a given office, a failure to
find them there raises a presumption that no such documents
ever existed. *Hall v. Kellogg*, 16 Mich., 135. But this pre-
sumption is by no means conclusive. It amounts simply to
*prima facie* evidence. The deed on the other hand is *prima
facie* evidence that they did exist, and were duly and legally
given and made. More than that, the testimony of the clerk
as to the destruction of papers, weakens the force of the pre-
sumption from his failure to find them. No attempt was
made by plaintiffs to introduce other testimony. No examin-
ation was made of the treasurer's office; no inquiry of the
party who was treasurer at the time of the sale, or his depu-
ties, or of the party who was then county clerk. None of
the publishers of the newspapers. Under these circumstances
we cannot say that the court erred in finding upon this ques-
tion against the plaintiffs.

One other point remains, and that, like the last, is not free

from difficulty. As heretofore stated, the sale was made to the county, which afterward assigned the sale-certificate to the defendant. The assignment was made in pursuance of a contract between the commissioners and defendant, for the sale of a large number of sale-certificates held by the county. The proposition of defendant, which was accepted by the commissioners, was substantially as follows: He proposed to buy all the claims for delinquent taxes "belonging to Jackson county on the following terms: I will pay for all correct and regular descriptions, for all sales for the years 1861, 1862, 1863, 1864, 1865, and 1866, the amount required by law to redeem the same, provided that all claims other than the above, and to include the sales for 1858, 1859, and 1860, and irregular or defective descriptions since, shall be quitclaimed to me for $100. Payment shall be made as follows, to-wit, $1,000 in hand, $1,000 per month thereafter until the whole is paid." Payments were to be secured by bills of exchange drawn on and accepted by some responsible banker in Leavenworth. The amount of this purchase was about $14,000, and about one-twentieth of this amount consisted of irregular and defective descriptions, and of sales for years prior to 1861. The sale-certificates in this case were in evidence. They were in all respects, both as to form and amounts, as they would have been if defendant had had no such contract with the county, and was only the purchaser from the treasurer and clerk in the manner provided for in the statute. Upon these facts counsel for plaintiff in error claims, that "defendant's lump trade with the county commissioners for all they had on hand was neither authorized by law, nor tolerable in good policy; that the right to purchase was alone from the treasurer; the commissioners had no authority whatever in the premises." Defendant on the other hand insists that the contract was good; but if not good, that it can have no effect in this case, because the treasurer and clerk did no more than they were compelled to do, that is, transfer the certificate upon the payment of the amount necessary to redeem. In other words,

**8. Contracts by commissioners in 1868 for assignment of sale-certificates, void.**

he insists that the invalidity of the contract can affect only those cases of sales before 1861, and of irregular and defective descriptions which were quitclaimed for $100; for those, and those only, were transferred for less than the amount legally due. It would seem to follow from the decisions already made in this court, and to appear from the provisions of the statute, that this contract between the defendant and the commissioners was *ultra vires*. The commissioners, it is true, are in a certain sense the general agents of the county. That is, to them is committed the general superintendence and management of the affairs of the county. There are however many limitations upon this general control. One is, that they cannot interfere with duties specifically assigned to a given officer. They may not direct what instruments the register of deeds shall record, what fees he may charge, or what certificates give. They may not control the county attorney in the prosecution of criminal actions. Nor can they give receipts for taxes, or assign sale-certificates. These are duties assigned to particular officers, and the manner of their discharge specifically indicated. Comp. Laws, p. 865, § 33; p. 867, §§ 43, 44; Laws of 1866, p. 274, §§ 60, 61; p. 277, §§ 73, 74; Gen. Stat., p. 1045, §§ 77, 78; p. 1048, §§ 90, 91. "Whenever any person shall pay into the county treasury a sum of money or warrant of the appropriate fund, or county orders equal to the cost of redemption at that time, or any such tract of land or town lot," is the language of the statute in reference to the assignment of a certificate of sale. Laws of 1866, p. 277, § 74; Gen. Stat., p. 1048, § 91. The statute having thus designated the officers to discharge this duty, and the manner of its discharge, the commissioners have no authority to interfere. They can no more make a valid contract in reference to the matter than they could one with reference to the fees the register of deeds should charge a third party for recording his deeds and mortgages. *The State v. Magill*, 4 Kas., 415; *The State v. McCrillus*, 4 Kas., 260; *Clough & Wheat v. Hart*, 8 Kas., 487. Though the property which cannot be sold to individ-

uals at a tax sale is struck off to the county, it does not become thereby like ordinary property of the county, subject to the control of the commissioners. If the purchase was an absolute purchase by the county, with a view of acquiring a perfect title, it would seem to follow that the county should be responsible to the townships, school districts, and the state for their proportion of the taxes upon the property purchased, and that the county should be permitted as a result of its purchase to subsequently obtain a deed. But see to the contrary, *Judd v. Driver*, 1 Kas., 455; *The State v. Comm'rs of Atchison Co.*, 1 Kas., 479; *The State v. Magill*, supra; *Guittard Township v. Comm'rs of Marshall Co.*, 4 Kas., 389; *Sapp v. Morrill*, 8 Kas., 677; *Tarr v. Haughey*, 5 Kas., 626. The contract therefore was *ultra vires*, and void. Douglass acquired no rights by such contract, nor was the treasurer or clerk justified thereby in disregarding the provisions of the statute. Other parties than the county are interested in the full payment of taxes. City, and township, and school-district, are alike concerned. We do not hold that the contract was against public policy, or good morals. It might be well if authority was given, once in a while, to some county officials to dispose as best they could of all the interest of the county in such back tax sales. But there was no such authority at the time of this contract, and hence it was without warrant of law, and void. But how does this affect the validity of

9. Where assignment is in fact made in accordance with the requirements of the statute, it is valid.

the assignment of the sale-certificates in this case? It seems to us that the result follows, as is claimed by the defendant, that the assignments were good for which full payment was made, and that the others alone are subject to attack. This *contract* was void. It was as though none had been made. It is not pretended that the treasurer and clerk were parties to this contract with defendant; and the authorities cited by counsel, as to the entirety of certain contracts, are not applicable. The assignments the treasurer and clerk executed were the only contracts they entered into. They assigned some certificates, receiving full payment therefor. This was legal, and passed full title

to the assignee. Others they assigned, receiving only part of what they should have received. This was illegal. Whether they rendered themselves liable for the difference between the amount received and that which should have been received, or not, whether the assignments passed a good title or not, whether they can be avoided or not, and whether Douglass would be responsible to the county for the above difference or not, are questions into which it is unnecessary, and would therefore be improper, for us to enter. It is enough in this case that the assignments were for a full and sufficient consideration.

These are all the questions necessary for determination in this case, and there appearing as to them no error in the ruling of the district court, the judgment will be affirmed.

All the Justices concurring.