NUCKOLLS COUNTY V. GUTHRIE & COMPANY.

FILED APRIL 18, 1906. No. 14,241.

**Mandamus: CANALS: BRIDGES.** Where water is diverted from its natural channel by means of a canal constructed and operated to supply power for a mill, it is the duty of the mill owner to erect and maintain suitable bridges for the convenience of the public at any point where the canal crosses a public road, and. mandamus will lie to compel the performance of that duty.

ERROR to the district court for Nuckolls county: LESLIE G. HURD, JUDGE. *Reversed with directions.*

*J. H. Broady* and *E. D. Brown,* for plaintiff in error.

*R. D. Sutherland* and *S. W. Christy, contra.*

JACKSON, C.

The county of Nuckolls instituted an action in the district court for that county, praying for a writ of mandamus to compel the defendant to erect and maintain bridges across a canal, used by the defendant for the purpose of supplying water-power used in the operation of a mill at Superior, at three points where the canal is crossed by public highways. The defenses interposed are of two classes, technical and those affecting the merits.

The Republican river approaches the town of Superior from the west, and at a point apparently somewhat west of the town turns to the south and forms what might be termed an ox-bow. Lost creek, a dry run, approaches

Superior from the northwest. Its course, as it approaches the river west of Superior, is southward until it reaches the bottom-lands adjacent to the river when, in an irregular course, it extends eastward and enters the Republican river on the east side of the ox-bow. The testimony discloses that originally there was no water in Lost creek, except in case of freshet or excessive rains, when it sometimes overflowed its banks and extended out over the bottom-lands. In 1874 the firm of Schuyler & Barnes erected a flouring-mill at Superior, and for the purpose of supplying the power for the operation of the mill, dug a ditch from the west side of the ox-bow on the Republican river eastward into Lost creek, and diverted water from the river into Lost creek, and thence through the original location of Lost creek to their power. During a freshet the canal dug by them was filled with quicksand. They took down their mill and sold the site which was acquired by Guthrie Brothers, a partnership, in 1877, who that year erected a new mill, deepened and widened the canal from the Republican river to Lost creek, and have since operated their mill by means of the power diverted in that way from the river. Three public roads cross this canal. The county of Nuckolls constructed bridges on those highways, one on a section line road between sections 35 and 36, in township 1, range 7, in 1874, while Schuyler & Barnes were building the canal from the Republican river into Lost creek; one on a half section line road running north and south through section 35, in 1879; and one on a half section line road running north and south through section 36, in 1881. They were all built originally on the banks of Lost creek, but the channel has widened, necessitating the building of approaches, or bridges of additional length. The bridge on the half section line running through section 35 was at one time a quarter of a mile south of where it is now located. In 1881, however, Guthrie Brothers dug a new channel across a bend in Lost creek, and diverted the water from the original channel to the new one, so that the bridge as

33

now located is not on the original banks of Lost creek, but is at a point where, so far as the record discloses, no bridge was necessary until the new channel was cut in 1881.

It is alleged in the answer of the defendant that, before cutting the new channel, they entered into an agreement with the board of county commissioners of Nuckolls county, by the terms of which, when the new channel was made, Guthrie Brothers were to move the bridge from its old foundation and erect it over the new channel, and that the bridge was thereafter to be maintained at the expense of the county. Upon that allegation of the answer the testimony is brief, and we quote it in full. Mr. Robert Guthrie, originally of the firm of Guthrie Brothers, now of the defendant corporation, testified on behalf of the defendant concerning the change of the channel in 1881: "Q. Before making the excavation, what agreement, if any, did you have with the county commissioners as to making it, and keeping up the bridge thereon or moving the bridge thereon? A. I believe that was in 1880. Q. Did you have an agreement that you refer to with the commissioners in session at the county seat, or not? A. My brother was first told by one of the county commissioners to go ahead and move the— Q. Don't tell what he told your brother. A. It was the county commissioners here at Nelson. Q. And were the commissioners in session when you made this arrangement with them? A. Yes, sir; I met them in Nelson. Q. And met them at the county seat, in session? A. Yes, sir. Q. Go ahead, Mr. Guthrie, and tell all about that agreement. A. We told them what we wanted to do, and they said it was all right, just go ahead and move it up there, that it was a better place than where it was located, the old road was swampy, and the water was coming right close to it, and people couldn't cross it without making a high grade. Q. Then, as I understand it, your agreement with the commissioners was that you should go on, or no objection would be made by any one to your making this excavation or race and

emptying and intersecting Lost creek? A. Yes, sir. Q. What was the agreement, Mr. Guthrie, about moving the bridge, if any, moving the bridge from its old position on Lost creek and locating it on the race that you were about to make? A. I presented the question to them that we was discussing about digging the race and moving the bridge, and they told me to go ahead and move it, that it would be an advantage to them as well as to us, enhance the road, renew the condition of the road. Q. And what, if any, agreement was made by the commissioners and yourself as to the maintenance of the new bridge at the new point? A. I don't remember any special agreement, only they told us it was all right, to go ahead and move the bridge. Q. And who has maintained that bridge at that point since that time? A. They always maintained it, never refused to maintain it." Two of defendant's counsel were called on behalf of the defendant and testified to having made an examination of the record of the proceedings of the board of county commissioners, and that no record could be found of any contract or agreement between the county and the defendant.

It appears that after doing business for some years as partners, Guthrie Brothers formed a corporation under the name of Guthrie & Co., and that the corporation defendant succeeded to the rights of Guthrie Brothers. There was a general finding for the defendant, and the county prosecutes error.

The statute provides that any railroad corporation, canal company, mill owner, or any person or persons who now own, or may hereafter own or operate any railroad, canal or ditch that crosses any public or private road, shall make and keep in good repair good and sufficient crossings on all such roads, including all the grading, bridges, ditches and culverts that may be necessary within their right of way. Comp. St. 1905, ch. 78, sec. 110. Construing this statute in *State v. Chicago, B. & Q. R. Co.*, 29 Neb. 412, it was held that under the act it is the duty of a railroad company to make and keep in repair suitable cross-

ings with approaches, notwithstanding the highway was laid out after the railroad was built, and that the public authorities are required to build that portion of the highway within the right of way, which they would have been required to make had the railroad not been constructed. With this construction of the statute before us, it is urged that there is no liability on the part of the defendant to construct and maintain bridges, because it is said that bridges were necessary to enable the public to cross Lost creek in any event. There is considerable merit in this contention as to the bridge on the section line between sections 35 and 36, and the one on the half section line through section 36, although the evidence impresses upon us the fact that the expense to the county of constructing and maintaining those two bridges, with the waters of the Republican river diverted into Lost creek, is greater than it would otherwise have been, and to the extent that the cost of the bridges under the present condition of the channel exceeds what it would have been, had the waters not been so diverted, the county has sustained an injury.

With the bridge on the half section line running through section 35, the conditions are entirely different. Here is a new channel created by the defendant. There is no pretense that there was any necessity for a bridge at that point prior to the time the channel was constructed. The claim of a contract with the county, under which the county was obligated to erect and maintain a bridge at that point, is entirely without support in the evidence. It does not appear that the county board ever took action, that it assumed to obligate the county in any respect. It is true that the testimony of the witness Guthrie discloses that the board was in session when he interviewed the members. The most that can be said of his evidence in that respect is that members of the board assented to the proposed change in the channel. We entertain no doubt about the liability of the defendant to erect and maintain a suitable bridge at that crossing.

But it is urged that the action was improperly brought

in the name of the county; that an action for mandamus can only be brought on the relation of the state. This objection is not well taken. The writ of mandamus is not a prerogative writ in this country. When it is an appropriate remedy, it is issued as a matter of course at the instance of a private suitor. *First Nat. Bank v. Lancaster*, 54 Neb. 467. Furthermore, the statute under which the action is instituted requires the proceeding to be brought in the name of the county. Comp. St., ch. 78, sec. 112.

Again, it is objected that the alternative writ ran in the name of the state. That, however, is in accord with the statute. It is said that the notices served on the defend-ant before the commencement of the action were insufficient, because it does not appear that the defendant owns a canal or ditch. It does appear, however, that it obtained the consent of property owners along Lost creek, and that it does own the land in section 35 over which the highway runs. The objection is without force or merit.

And, finally, it is contended that the county is estopped from asserting its right, because for a period of 20 years it has kept up and maintained these bridges without any claim of liability on the part of the defendant. This contention is equally without merit. The obligation is a continuing one, and will last so long as the statute remains in force and the necessity for bridges exists. The evidence discloses that the bridges in question are in a dangerous condition and in need of immediate repair.

We recommend that the judgment of the district court be reversed and the cause remanded, with directions to enter judgment requiring the respondents to erect and maintain a suitable bridge over its canal on the half section line road running through section 35, township 1, range 7.

ALBERT, C., concurs.

By the Court: For the reasons stated in the foregoing

opinion, the judgment of the district court is reversed and the cause remanded, with directions to enter judgment requiring the respondents to erect and maintain a suitable bridge over its canal on the half section line road running through section 35, township 1, range 7.

JUDGMENT ACCORDINGLY.