No. 19,229.

THE STATE OF KANSAS, ex rel. CHARLES D. ISE, as County Attorney, etc., *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. HIGHWAY—*Notice of Viewers' Meeting—Affidavits Showing Service Lost—Presumptions.* A finding that a road which was declared established by the board of county commissioners, and which has been used by the public for years, is a regularly laid out highway, will not necessarily be overthrown by the fact that the affidavits showing the service of notice of the viewers' meeting, which the law requires to be filed with the county clerk, can not be found in his office.

2. SAME—*Change of Highway across Existing Railroad—Duty of Railway Company to Make Safe Crossing.* Whether or not the railway company is ordinarily required at its own expense to place a highway, at a point where it is laid out across an existing railroad, in such condition that there shall be no unnecessary interference with travel, this obligation results where a highway which antedates the railroad is vacated and a new road taking its place is established, crossing the track

The State, *ex rel.*, v. Railway Co.

near the same point, and several years thereafter the embankment on which the railroad track is laid is raised some eight feet.

3. SAME—*Manner of Making Railroad Crossing Safe—Within Discretion of Court—Based on Evidence.* Where the situation is such that a railway company is under a legal obligation to restore a highway across its track to a reasonably safe condition for travel, and this result can not be otherwise accomplished, a court may require the construction of a subway, but only where the necessity is clearly shown and supported by competent expert evidence.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed April 10, 1915. Modified.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*S. M. Brewster,* attorney-general, *Charles D. Ise,* county attorney, and *A. L. Billings,* of Independence, for the appellee.

The opinion of the court was delivered by

MASON, J.: On January 27, 1913, the state brought an action against the Atchison, Topeka & Santa Fe Railway Company, alleging that a grade highway crossing of its track is so constructed as to be unnecessarily dangerous to the traveling public, and asking relief by injunction. A judgment was rendered for the plaintiff and the defendant appeals.

The defendant maintains that the road referred to is not a regularly laid out highway. This contention is based on the fact that the affidavits showing the giving of notice to landowners, advising them of the meeting of the viewers, were not produced at the trial, nor was there any direct evidence of their ever having been filed with the county clerk, as required by statute. (Gen. Stat. 1909, § 7277; Laws 1911, ch. 248, § 5.) The filing of such affidavits is a prerequisite to the establishment of the road, and if they were never filed

the attempt to create a highway failed. (*The State v. Farry*, 23 Kan. 731.) The trial court found that the highway had been regularly established, and this implied a finding that the affidavits had been filed. They were not among the papers relating to the opening of the road. The county clerk testified that he had made a search and had found no other papers relating to the matter than those he produced. This showing was not conclusive that the affidavits had not been filed. Of a somewhat similar situation, growing out of the failure to find an affidavit the original existence of which was necessary to the validity of a tax deed, it was said in *Morrill v. Douglass*, 14 Kan. 293:

"It is probably true that when notices, affidavits, etc., are directed to be preserved in a given office, a failure to find them there raises a presumption that no such documents ever existed. . . . But this presumption is by no means conclusive. It amounts simply to *prima facie* evidence. The deed, on the other hand, is *prima facie* evidence that they did exist, and were duly and legally given and made. More than that, the testimony of the clerk as to the destruction of papers weakens the force of the presumption from his failure to find them." (p. 304.)

Every other indication pointed to the regularity of the road proceedings. The record is not criticised in any other respect. The road was opened in October, 1898, to replace an earlier road crossing the track near the same point, which was vacated. It has been maintained and used by the public ever since, being a part of the main road between Independence and Cherryvale. The railroad was constructed before the highway was laid out. The railway company was entitled to receive notice of the meeting of the viewers. (*The State v. Bogardus*, 63 Kan. 259, 65 Pac. 251.) It could of course waive the notice and the filing of the affidavit of its service. (*Stephens v. Comm'rs of Leavenworth Co.*, 36 Kan. 664, 14 Pac. 175.) There is no indication of the company having raised any ques-

tion as to the legality of the proceedings, or having treated the crossing in any different manner from those of other highways. We think it can not be said that there was no evidence to support the finding that the road was regularly established.

The defendant maintains that, the highway being of later origin than the railroad, it owes the public no duty with regard to the crossing except that imposed by the statute requiring plank to be laid beside the rails and the intervening space to be filled. (Gen. Stat. 1909, § 7011; Laws 1911, ch. 246, § 1.) An earlier statute, which the defendant regards as referring only to highways in existence when a railroad is constructed, reads:

"Every railway corporation shall . . . have power . . . to construct its road across, along or upon any . . . highway . . . which the route of its road shall intersect or touch; but the company shall restore the . . . highway . . . intersected or touched, to its former state, or to such state as to have not [un]necessarily impaired its usefulness." (Gen. Stat. 1909, § 1763, subdiv. 4.)

The statutory requirement that the railroad company shall place the highways which it crosses in fit condition for travel is purely declaratory. (33 Cyc. 236, 270.) It is usually said that the common-law rule applies only to those highways which antedate the railroad. (33 Cyc. 285.) And this might seem to be the effect of the statute quoted. But in a recent carefully considered case the supreme court of Minnesota decided that an act of the legislature substantially like our own was to be interpreted as applying also to highways laid out after the construction of the railroad, and moreover, that the common law imposed the same duty regardless of the statute. (State, ex rel., v. St. Paul, M. & M. Ry. Co., 98 Minn. 380, 108 N. W. 261, affirmed in 214 U. S. 497.) The line of reasoning followed on each proposition is indicated by the following excerpts from the opinion:

"It is not, therefore, . . . unreasonable to be-

lieve that they [the legislature] contemplated, when providing for the care of highway and street crossings, not only those then existing, but such as might thereafter, in the course of the growth and development of the state, become necessary to be laid across the railroad's right of way. The evils intended to be guarded against are the same and apply equally to both new and old streets. There was no reason why the legislature should deem it prudent to provide for existing highways only; and we do no violence to the rules of statutory construction in holding that the provisions of defendant's charter were intended to include all streets and highways intersected by railroads, whether laid out before or after the building of the railroad. The expression of the statute is special, perhaps; but the reason therefor is general. The expression must therefore be deemed general. . . . In view of the fact that the railroad company takes its franchise subject to the reserved right of the state to lay new streets over and across its track, and in contemplation that it may do so, . . . and the further fact that the company is solely responsible for the necessity of safety devices at street crossings, the same being occasioned by the operation of its trains over and across the street, and the further elementary principle that he who creates and maintains upon his premises a condition dangerous and inimical to others is under legal obligation to so guard and protect it that injury to third persons may not result therefrom, the rule of the common law as to existing, must be held to apply equally to new, streets." (pp. 398, 401.)

(See, also, *Lake Erie, etc., R. Co. v. Shelley,* 163 Ind. 36, 71 N. E. 151; *Cincinnati, etc., R. Co. v. City of Connersville,* 170 Ind. 316, 83 N. E. 503.)

Whether we should adopt in full the view of the Minnesota court need not now be determined, for this case is affected by two special circumstances: The present highway was established to take the place of an older one, which was in existence when the railroad was built, in 1872. Whether or not this consideration should affect the strictly legal rights of the parties, it has an obvious bearing upon the question of any actual

hardship suffered by the defendant from the application of the rule in this case. And in 1904, six years after the establishment of the present highway, the embankment forming the roadbed was raised eight feet, presenting a situation entirely different from that existing when the earlier road was vacated and the new one laid out. Whatever might have otherwise been the rule, we conclude that in view of these facts it is the duty of the railway company to place the highway at the point of intersection in such condition that there shall be no unnecessary interference with travel.

The defendant also maintains that inasmuch as the railroad was built before the highway was laid out, it would be entitled to recover from the county, as damages, the expenses of constructing such crossing as might be adjudged necessary to meet the requirements of the situation. It has been decided in this state, by a divided court, that where a highway is established across a railroad right of way, the compensation to which the company is entitled includes all expenditures it is required to make by reason of the existence of the crossing. (*K. C. Rld. Co. v. Comm'rs of Jackson Co.,* 45 Kan. 716, 26 Pac. 394; *C. K. & W. Rld. Co. v. Comm'rs of Chautauqua Co.,* 49 Kan. 763, 31 Pac. 736.) This is contrary to the great weight of authority elsewhere (33 Cyc. 286; Note, 24 L. R. A., n. s., 1232-1234), and to the later decision of the supreme court of the United States, which disposes of all federal constitutional questions in that connection (*Chicago, Burlington &c. R'd v. Chicago,* 166 U. S. 226, 255. See, also, *St. Paul, M. & M. Ry. Co. v. Minnesota,* 214 U. S. 497; Note, 28 L. R. A., n. s., 298). Here, however, the matter is affected by the exceptional circumstances already stated. The duty of the company to put the crossing in fit condition for travel being in this case of the same character as that arising when a railroad is built across an existing highway, the expense must be borne by the company.

The case then is substantially one brought to enforce the legal duty of the railway company to provide a reasonably safe crossing for travelers on the highway. This duty is enforced either by mandamus or injunction. (8 A. & E. Encycl. of L. 374; 33 Cyc. 281.) The condition resulting from its breach is sometimes spoken of as a nuisance. (33 Cyc. 237, 268, 280.) One of the principal controversies developed at the trial was whether or not the situation required the construction of an undergrade crossing. The railway company produced evidence to the effect that such a crossing would cost $9813.88, while a wide grade crossing, reasonably adequate to the situation and sufficient to overcome the specific dangers complained of, could be constructed for $2477.90. The judgment was that the defendant "be perpetually enjoined from maintaining said embankment and over- or grade crossing constituting said public nuisance," and it was ordered "to abate said public nuisance by commencing actual abatement thereof within sixty days, . . . and to continue said abatement without unnecessary delay until wholly abated." The defendant interprets this judgment as making a specific requirement that it shall construct a subway under its track. The plaintiff regards it as a decision that the present condition is unlawful, and a command to remedy the condition, without specifying the method. The plaintiff adds:

"Appellee does not say to this Court or appellant in what manner appellant should abate the nuisance; that is a matter for appellant with its splendid engineering department and abundant means. It might comply with an over-crossing properly protected; by an underground crossing properly constructed; by an elevator; by a flagman; or by signals."

The language of the judgment is somewhat ambiguous. It does not unequivocally order an under-grade crossing, and yet it leaves a doubt whether any other method of compliance is open. The defendant is en-

titled to a more definite command before being required to undertake its execution.   Of the character of order to be made in similar proceedings, it is said:

"The mode of restoration should ordinarily be left in the first instance to the discretion of the railroad company, and in a proceeding to compel a restoration the writ should ordinarily be general and not specific as to what the railroad company shall do; but the railroad company has no discretion as to whether it will restore the highway, and in any case where the nature of the thing to be done is uncertain and can only be determined by the judgment of the court, the writ may properly be made specific; and where the railroad company in the exercise of its discretion has adopted a method of restoration which it claims to be sufficient, and which the court adjudges to be insufficient, it may properly direct specifically what the railroad company shall do so as not to fail again."   (33 Cyc. 272.)

In a case where the attempted compliance with an order couched in general terms was found to be unsatisfactory, a subsequent specific order was issued, the court saying:

"The second point made by the appellant is, that the peremptory writ may do no more than, in general terms, to direct it to restore the highway.   It is claimed that there is a discretion reposed in it by the statute as to the manner in which the restoration shall be effected; that it is an engineering question, which the court can not determine in a particular manner, when there may be other ways equally as good in result. . . . Though in the first instance there may be a discretion with the appellant, it is not that which is known as judicial.   That may not be commanded by mandamus to act in a certain way.   The discretion here is a ministerial one.   The act of restoration must be done.   If the discretion as to mode of doing it is so well exercised as that the restoration is complete, that is well.   The object of this action is to test that.   The appellant insists that it had well exercised it.   The court has determined that it had not.   The court will and should point out to it, in what it has failed, and direct it particularly what it must do so as not to fail again."   (*People, ex rel. Green et al., v. D. & C. R. R. Co.*, 58 N. Y. 152, 162, 163.)

In *Wabash R. Co. v. Railroad Com., etc.*, 176 Ind. 428, 95 N. E. 673, it was said:

"The right of a railroad company to cross a highway with its tracks carries with it the duty on the part of the company to restore the highway to, and keep it in its former condition of usefulness and safety, and if this cannot be done by a grade crossing, the company must do it either by constructing its tracks over or under the highway or the highway over or under its tracks." (p. 436.)

(See, also, *State v. Minneapolis & St. Louis Ry. Co.*, 39 Minn. 219, 39 N. W. 153; *State ex rel. City of Duluth v. St. Paul & D. R. Co.*, 75 Minn. 473, 78 N. W. 87; *Peo. ex rel. Town of Colesville v. D. & H. Co.*, 177 N. Y. 337, 69 N. E. 651; *Burlington & Colo. R. Co. v. People*, 20 Colo. App. 181, 77 Pac. 1026.)

It is the duty of the railway company to restore a highway which is crossed by its track to as good a condition for travel as is practicable, and ought fairly to be required in the circumstances presented. If a court finds the situation in a particular instance to be such that a reasonably safe and serviceable crossing can not be made at grade, no reason is apparent why an undergrade crossing may not be ordered. But to justify it the necessity should be clearly shown, and supported by the evidence of competent experts. We do not regard the evidence as warranting a finding of such necessity in the present case, nor was any made, unless it is to be implied from the language already quoted. The findings of fact made by the trial court are approved and will stand. The decree rendered will be set aside because of its ambiguity, and the cause will be remanded with directions that the court either render such judgment on the present findings as not necessarily to require the construction of a subway, or to take further evidence and make additional findings bearing upon that matter and be governed by the result.

Pending the decision of this case argument was invited on this question: Has the state public utilities

commission jurisdiction to inquire into and determine whether or not the means taken or about to be taken by a railroad company to restore a highway which is crossed by its track to a suitable condition for travel are such as to meet the requirements of the situation; and if they are found unsuitable, to direct the company to construct a crossing upon plans determined by the board to be essential to the safety of the traveling public? Each party has expressed the belief that no such power is possessed by the board. Only one side of the question having been argued, no decision of it is made. Having in mind that a railroad company violates the law if it fails to restore a highway, which it crosses, to such a state as not to have unnecessarily impaired its usefulness, and that just what constitutes that condition, and how it may be secured, is sometimes doubtful, it was thought that possibly jurisdiction to determine such questions was conferred on the board by these provisions of the statute:

"Said commissioners shall have the general supervision of all railroads operated by steam . . . within the state, . . . *and shall inquire into any neglect or violations of the laws* of this state by any person, company or corporation engaged in the business of transportation of persons or property therein, or by the officers, agents or employees thereof; and shall also from time to time carefully examine and inspect the condition of each railroad in the state, and of its equipment, and the manner of its conduct and management with reference to the public safety and convenience." (Gen. Stat. 1909, § 7186.)

"Whenever in the judgment of the board of railroad commissioners it shall appear *that any railroad corporation* or other transportation company *fails in any respect* or particular *to comply with* the terms of its charter or *the laws of the state,* or whenever in their judgment any repairs are necessary upon its road, . . . *or any change in the mode of operating its road* and conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public, said commissioners shall inform such corporation of the improvement and

changes which they deem to be proper; . . . and if such orders are not complied with within the time stated in said notice, the attorney for the board shall forthwith file with the commissioners a complaint in writing, praying for an investigation of said matter, which complaint shall be heard according to the provisions of this act as in other cases." (Gen. Stat. 1909, § 7188.)

DAWSON, J., not sitting.