MAY TERM, 1916. 277

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

---

CITY OF INDIANAPOLIS *v.* INDIANAPOLIS WATER COMPANY.

[No. 22,985. Filed June 28, 1916. Rehearing denied October 27, 1916.]

1. BRIDGES.—*Construction.*—*Repair.*—*Common Law.*—Under the common law any person who, although acting under lawful authority, cuts through an existing public highway and thus renders a bridge necessary must build a bridge to enable the public to exercise their right of passage, and must maintain and repair such bridge and its approaches, until he abandons his operations and restores the highway to its original condition, and this obligation attaches even though the statute authorizing the construction of the new work is silent on the subject, and it is a continuing duty in the nature of a covenant running with the land, which will ordinarily pass to successive owners of the property. p. 285.

2. EVIDENCE.—*Judicial Notice.*—*History of Canal and Canal Legislation.*—The Supreme Court may take judicial notice of the history of the Central canal and of the legislation relative thereto. p. 288.

278 SUPREME COURT OF INDIANA,

City of Indianapolis *v.* Indianapolis Water Co. —185 Ind. 277.

3. CANALS.—*Bridges.*—*City Charter.*—*Common-Law Duty of Owner of Canal.*—Section 27 of the Indianapolis charter, Local Laws 1847, p. 57, giving the city exclusive jurisdiction over all streets and watercourses .in the city for the purpose of opening and keeping the same in repair, and requiring the city to build and keep in repair all bridges over watercourses crossing such public streets within the city limits as the city council should declare it necessary to have bridges erected over, and providing that all bridges then built be continued and making the city liable to persons injured by neglect or refusal to repair such bridges, did not operate to relieve the owner of a private enterprise from any of the duties imposed on him by common law or to prevent the city from recovering for sums expended by it in discharging such an obligation in his behalf.     pp. 288, 289.

4. STATUTES.—*Construction.*—*Repeal of Common Law.*—A statute will be held to abrogate the common law only when that intention is declared expressly or by necessary implication.     p. 289.

5. STATES.—*Liabilities.*—*Private Property.*—*Contracts.*—The state, as much as one of its citizens, is subject to the fundamental law, and, as an abstract proposition, a liability does exist on its part to its citizens to a legal claim for damages to his property, though he may be without a tribunal to which he may cite it for redress, and the contracts of a state are interpreted as are the contracts of individuals, the law measuring individual rights and responsibilities being the same as that measuring, with few exceptions, those of a state whenever it enters into an ordinary business contract. p. 290.

6. STATES.—*Liabilities.*—*Torts.*—In the absence of a statutory provision, a state cannot be made to respond in damages for the torts of its officers or agents, whose conduct or fidelity it does not undertake to guarantee, which rule is based on the doctrine that the sovereign is immune from suit as well as on the absence of an obligation, the absence of an obligation in such cases resting on the common-law principle making the doctrine of *respondeat superior* there inapplicable.     p. 291.

7. STATES.—*Public Enterprises and Contracts.*—*Liability.*—The state, although not a corporation in the strict and subordinate use of the term, may and does act as a corporate entity in a broad sense when it engages in the promotion of public enterprises and in binding itself generally by contract, and when acting in that capacity its acts are subject to the same principles of law as are the acts of an individual, although, as a matter of public policy, it is immune from suit to enforce obedience to such principles. p. 291.

8. MUNICIPAL CORPORATIONS.—*Streets.*—*Title.*—*Right of User.*— When a street or highway has been dedicated to and accepted for public use, the title to the easement may rest in the state or in its municipality but, until modified or extinguished pursuant to legis-

MAY TERM, 1916.                    279

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

lative enactment, a right of user accrues to the traveling public which is protected by the fundamental law and its free maintenance is required as against subsequent ways or users, whether private or public, which would otherwise limit its enjoyment.    p. 292.

9.   HIGHWAYS.—*Maintenance.—Obstruction.—Private Liability.*—The obligation to maintain a highway dedicated to the use of the public is not a personal one, but a continuing condition imposed by operation of law, and where the state transfers its canal, which obstructs a public highway in existence prior to the building of such canal, to a water company, the duty to maintain the highway over the canal is enforceable against the transferee, even though not against the state because of its immunity from suit.    p. 292.

10.   CANALS.—*Bridges.—Construction.—Repair.—Duty    of    Water Company.—Dedication of Streets.—Sufficiency of Complaint.*—In an action by a municipality to compel a water company to construct and maintain bridges over its canal at certain streets within the city limits, a complaint containing allegations showing that the plaintiff had been a municipal corporation since a time prior to the construction of the canal; that the State of Indiana on acquiring lands from the United States for a site for plaintiff city, subdivided such lands into blocks and located certain streets on the plat, including a street which was used as a highway in the town of Indianapolis prior to the building of the canal; that subsequent to the construction of the canal bridges were built over it to enable the public to continue the use of certain streets which had been previously laid out and established, sufficiently shows a dedication to public use of the streets mentioned in the complaint.    p. 294.

11.   DEDICATION.—*Highways.—Change of Form of Government or Territorial Boundaries.*—A change in the form of government of a city or of its territorial boundaries will not defeat a dedication of its highway to public use.    p. 294.

12.   CANALS.—*Bridges.—Repairs.—Action by City to Recover for.—Estoppel.*—Since the duty of a canal builder to construct and maintain a bridge at its intersection with an existing public highway is a continuing obligation which will last as long as the necessity for the bridge exists, a city is not estopped from enforcing that obligation merely because it has, for a period of years, maintained the bridge without asserting its claims against the builder or his grantees.    p. 295.

13.   RAILROADS.—*Crossings    and    Approaches.—Construction    and Maintenance.—Police Power of State.*—While it is generally held that, in the absence of statute, a railroad company cannot be required to construct and maintain crossings where a street or highway is made across its right of way after the construction of the railroad, there being no common-law duty on the part of the railroad company in such cases to construct crossings or bridges or approaches thereto, yet the state, in the exercise of its police power, may by legislative enactment exact that duty of railroad

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

corporations, as every such corporation acquires its right of way subject to the contingency that public highways may later be built or extended across the same, and subject to the right of the state, under its police power, to thereafter compel the railroad company to provide suitable bridges and crossings for new highways as well as for those in existence at the time its road is constructed, so that the traveling public may be protected against the hazards and risks incident to the operation of railroad trains across highways. p. 296.

14.  CANALS.—*Maintenance of Bridges.*—*Common Law.*—At common law a canal proprietor is under no obligation to construct or maintain bridges at highways which were not in existence at the time of the establishment of the canal, even though such highways are laid out by duly authorized public officials.    p. 298.

15.  EMINENT DOMAIN.—*Taking of Property.*—*Police Powers.*— Uncompensated obedience to a regulation enacted for the public safety under proper exercise of the police power does not constitute a taking of property without due compensation, and the constitutional prohibition against the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well-ordered community, nor of that general power over private property which is necessary for the orderly existence of all governments.    p. 299.

16.  BRIDGES.—*Construction.*—*Regulation by State.*—*Police Power.*— The State may, in the exercise of its police power, so regulate the methods and plans of construction used in the building of public bridges that their safety may be assured.    p. 301.

17.  CANALS.—*Bridges.*—*Construction and Maintenance.*—*Statute.*— *Power of Board of Public Works.*—Section 8696, cl. 15, Burns 1914, Acts 1905 pp. 219, 280, providing that a city board of public works shall be empowered to straighten, deepen, or otherwise change or improve any watercourse, natural or artificial, within such city, and to require the owners of canals and watercourses to construct and maintain bridges across the same at street and alley intersections, authorizes such board, which is an administrative and not a legislative body, to compel the owner of a canal to build and maintain bridges at streets extended across it only when that duty is imposed on such owner by some other rule or provision of law. p. 301.

. From Marion Circuit Court (18,248); *Louis B. Ewbank*, Judge.

.Action by the City of Indianapolis against the Indianapolis Water Company. From a judgment for defendant, the plaintiff appeals.  *Reversed.*

*Paul G. Davis, William A. Pickens, Walter Meyers* and *Russel J. Ryan,* for appellant.

*Baker & Daniels* and *J. J. Daniels,* for appellee.

SPENCER, J.—All of the questions presented by this appeal arise out of the action of the trial court in sustaining a demurrer to each of the three paragraphs of appellant's complaint. This pleading is drawn on the general theory that appellee, as the owner of a canal which lies partly within the boundaries of the city of Indianapolis, is responsible for the construction and maintenance of all bridges over such canal which are made necessary by the intersection of the same with public streets.

The first paragraph of complaint alleges more particularly that appellant is a municipal corporation of the State of Indiana and has been such, first, as a town, and from thence till now, continuously, as a city, since a date prior to the year 1830; that it is now, and for more than ten years last past, continuously, has been a city of the first class, as defined by the act of March 6, 1905 (Acts 1905 pp. 219, 239; §8643 Burns 1908), entitled "An Act concerning municipal corporations," and is governed and controlled by that act, and by other statutes of Indiana amendatory and supplementary thereto, in so far as said several statutes apply to such cities of the first class; that appellee, a corporation of Marion county, Indiana, was organized and incorporated on April 21, 1881, and in that year acquired by purchase all of the property, rights and franchises previously owned and held by the Waterworks Company of Indianapolis and assumed all of the burdens attaching thereto; that the expressed object of the incorporation of said original waterworks company and of appellee in their respective articles of association and certificates of

incorporation was to furnish to appellant city and to the inhabitants thereof water for domestic use, for the extinguishing of fires and for manufacturing purposes; that said original company, from the time of its incorporation on October 7, 1869, to the organization of appellee, and the latter company from that time to the present, have continuously been engaged in carrying out said objects, there having been no other person or corporation engaged in performing like services for appellant or its people at any time since the incorporation of said original waterworks company.

It is further alleged that on April 19, 1816, the State of Indiana acquired by grant from the United States of America, for a permanent seat of government for the State, certain lands situate in what is now Marion county, and thereafter, in the year 1821, subdivided such lands into squares, lots and outlots, and located certain streets on the plat thereof, including a street known as New York street which became and was used as a public highway in the town of Indianapolis prior to the construction of the canal herein referred to; that in the year 1836 the State of Indiana, by an act of its general assembly (R. S. 1838 p. 337), provided for a general system of internal improvements to be constructed by and to belong to the State, and, to that end, by that act, created a state board of internal improvements which thereafter began, and, in the year 1838, completed the construction of the "Central Canal" from and including its White river feeder dam and locks at Broad Ripple to Market street in the town of Indianapolis, and its hydraulic arm from that point to a spillway into White river, and then placed the same in operation for the purposes of navigation and hydraulic power as contemplated by the statute of 1836, and the

same was thereafter used for such purposes for a number of years under lease from the State; that on June 30, 1851, by deed duly authorized, the State of Indiana conveyed to Francis A. Conwell, his heirs and assigns, "all the right, title and interest of the State of Indiana in and to that portion of the Northern Division of the Central Canal situate north of Morgan County, and all the rents which shall become due after the sale of said property and the water power, and appurtenances thereunto belonging, and all the right, title, interest, claim and demand which the State may hold or possess in such portion of said canal, including its banks, margins, tow paths, side cuts, feeders, basins, right of way, dams, water power structures, and all appurtenances thereunto belonging"; that by mesne conveyances all of said property and rights on May 1, 1870, by deed of that date, vested in the Waterworks Company of Indianapolis, from whom, as aforesaid, the title passed in 1881 to appellee; that each grantee of said property from the immediate grantee of the State to appellee, both inclusive, took full possession of the property and held the same until he conveyed to his immediate grantee thereof.

The complaint then sets out in full certain franchise contracts in writing, and amendments thereto, which were entered into by appellant city with both the Waterworks Company and appellee, as its successor, relative to the furnishing of water to the city and its inhabitants, but it is not necessary for the purposes of this appeal here to state the same in detail. It is further alleged that, subsequent to the construction of the canal, as aforesaid, and for the purpose of enabling the public to continue the free and uninterrupted use for public travel of certain streets which had been previously laid out

284    SUPREME COURT OF INDIANA,

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

and established, bridges from time to time were built over the canal at points where the same had been constructed across such streets, and by means of such bridges said streets were carried over and across the canal and their use as public highways was thereby continued and maintained at such places; that for many years prior to March 6, 1905, said bridges were maintained and kept in good repair so as to be safe and suitable for public travel at the expense of the town and city of Indianapolis, but that the payment of the cost and expense of such maintenance and repairs by the town and city of Indianapolis was at all times improper and unlawful; that it has been and was at all times the duty of appellee, from the time it acquired possession of the canal property in the year 1881, to maintain each and all of such bridges and to keep the same in good repair at its own expense; that after March 6, 1905, and on or about August 22, 1906, the bridge which formed the crossing of New York street over the canal became and was out of repair and needed repairs in order to make and keep it safe for public travel; that on that day appellant, by its board of public works, duly notified appellee that said bridge was so out of repair and demanded that appellee, at its own expense, proceed to put such bridge in such condition of repair as would make it safe for public travel thereon, but that appellee stated to appellant, in response to said demand, that it would not make such repairs and denied any authority of appellant to require it so to repair said bridge; that appellant thereupon made and paid for certain needed repairs thereto at the reasonable cost and expense of $266.37, for the payment of which demand was thereafter made on appellee and refused; and the prayer asks for judgment.

The second paragraph of complaint seeks to

MAY TERM, 1916. 285

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

recover for repairs made by appellant, in the year 1906, to a bridge over appellee's canal at its intersection with Fifteenth street, and differs from the first paragraph only in so far as it shows that at said point Fifteenth street, then known as part of the Michigan road, was a state highway at the time the canal was constructed, and was not annexed to the city of Indianapolis until the year 1871.

The third paragraph of complaint also contains most of the averments of the first, but asks judgment for the cost of a new bridge, erected and paid for by appellant in the year 1907, at what is known as the Twenty-ninth street crossing. There was no highway at that point when the canal was built and no bridge was there located until 1907.

In taking a general position that appellee, as the owner of an artificial waterway which intersects public streets, is bound to construct and maintain all such bridges and approaches thereto as are necessary to insure to the traveling public safe and convenient passage over such waterway, appellant asserts that this duty is imposed both under the common law and by the express provisions of §8696, cl. 15, Burns 1914, Acts 1905 p. 219, 280, which authorizes the board of public works of a city "to straighten, deepen or otherwise change or improve any water course, natural or artificial, within such city or within four miles thereof, and to require the owners of canals and water courses to construct and maintain bridges across the same at street and alley intersections."

There can be no doubt that at common law any person who, although acting under lawful authority, interferes with and cuts through an existing
1. public highway and thus renders a bridge necessary, must build such a bridge in order to enable the public to exercise their right of passage,

and must maintain and repair such bridge, with its approaches, until he abandons his operations and, restores the highway to its original condition. Many of the following authorities which recognize this rule expressly apply the same to the construction of bridges over canals. *Wayne County Turnpike Co. v. Berry* (1854), 5 Ind. 286, 288; *Board, etc. v. White Water Valley Canal Co.* (1850), 2 Ind. 162; *Fort Wayne, etc., Co. v. Board, etc.* (1899), 24 Ind. App. 514, 517, 57 N. E. 146; *Board, etc. v. Fort Wayne, etc., Co.* (1896), 17 Ind. App. 36, 39, 46 N. E. 36; *Reg. v. Inhabitants of the Isle of Ely* (1850), 14 Jurist (Old Series) 956, 962; *Rex v. Kerrison* (1815), 3 Maule & Selwyn 526, 531; *Hertfordshire Council v. New River Co.* (1904), 2 Ch. 513, 519; *Dygert v. Schenck* (1840), 23 Wend. (N. Y.) 446, 35 Am. Dec. 575; *Perley v. Chandler* (1810), 6 Mass. 454, 458, 4 Am. Dec. 159; *City of Lowell v. Proprietors of Locks & Canals* (1870), 104 Mass. 18, 21; *Chesapeake, etc., R. Co. v. Jennings* (1900), 98 Va. 70, 34 S. E. 986.

The principle on which the rule rests, to quote from *Reg. v. Inhabitants, etc., supra,* p. 962, "seems to be this—undoubtedly a just one—that where the act making the bridge necessary, though authorized to be done, interferes with the public right, is done primarily for private purposes, and the public user, from which the public benefit is inferred, is to be referred only to the act, because made necessary by it, the public, indeed, remaining only with the same convenience which it had before, the authority to do the act is conditional only, equally whether the condition be expressed or implied; and the condition also is, in both cases, continuing, so long as the act continues whereby the public right is interfered with."

MAY TERM, 1916.                287

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

Further authority for the rule that this obligation attaches even though the statute authorizing the construction of the new work is silent on the subject, and that it is a continuing. duty in the nature of a covenant running with land, which will ordinarily pass to the successive owners of the property, may be found in the following cases. *Phoenixville* v. *Phoenix Iron Co.* (1863), 45 Pa. St. 135, 140; *Hertfordshire Council* v. *New River Co., supra,* at p. 518; *City of Chicago* v. *Pittsburgh, etc., R. Co.* (1909), 146 Ill. App. 403, 414; *Pennsylvania R. Co.* v. *Duquesne Borough* (1863), 46 Pa. St. 223, 228; *President and Trustees, etc.* v. *Mann* (1883), 59 Wis. 69, 17 N. W. 972; *Dyer County* v. *Railroad* (1889), 87 Tenn. 712, 723, 11 S. W. 943.

Appellee does not seriously question the existence of these rules as abstract propositions of law but asserts that they are not applicable to the instant case for the reasons: (1) That the canal now owned by appellee was constructed by the State of Indiana which was under no duty to erect or maintain bridges at points where the work intersected public streets; (2) that by the Indianapolis Charter Statute of 1847 (Loc. Laws 1847 p. 57), that duty was expressly placed on appellant city; and (3) that the deed by which the State conveyed its interest in the canal to Conwell and his assigns, contained no provision which created in the grantee an obligation to construct and maintain such bridges, and must therefore be construed, particularly in view of the above charter statute, as passing an absolute fee-simple title without condition or limitation attached, and without a reservation of a right on the part of the State thereafter to create such an obligation.

We may, of course, take judicial notice of the

288    SUPREME COURT OF INDIANA,

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

history of the Central canal and of the legislation relative to the same. *Board, etc.* v. *Fort Wayne, etc., Co., supra*, p. 38. Section 27 of the charter statute of 1847, *supra*, provides that: "The corporation of the city of Indianapolis shall have exclusive jurisdiction over all streets, roads, and alleys, and water courses within the city for the purpose of opening and keeping the same in repair; and it shall be the duty of the city council to provide by ordinance for keeping in repair all streets, roads and alleys within the limits of the city, and to build and keep in repair all bridges (except bridges over White river), over all water courses crossing such of the public streets and roads within the limits of the city, as the city council shall declare by such ordinance, it is necessary and proper to have bridges erected over, so as to secure the safe passage over the same of the inhabitants of the city and others crossing and re-crossing the same. *Provided*, that the bridges now erected shall be continued; and for wilful refusal or neglect to repair any such bridges within a reasonable time, after three days notice of the want of such repairs of any of said bridges, to be served in writing on the president of the city council, the corporation of the city shall be liable to all persons injured by such neglect or refusal to repair such bridges for all damages sustained by such persons injured thereby."

Assuming for the moment that under the common law it was the duty of the State, as the builder of the Central canal, to construct a bridge over the same wherever it cut through an existing public highway, it follows that if, as appellee contends, the above provisions of the act of 1847, *supra*, served to place that duty exclusively on appellant city, and to relieve all others, they are in derogation

of the common law. The rule is well settled, however, that a statute will be held to abrogate the common law only when that intention is declared expressly or by necessary implication. *Chicago, etc., R. Co.* v. *Luddington* (1910), 175 Ind. 35, 42, 91 N. E. 939, 93 N. E. 273, and authorities cited. Substantially the same question was presented to the Supreme Court of Maryland in the case of *Chesapeake, etc., Canal Co.* v. *County Commissioners* (1881), 57 Md. 201, 40 Am. Rep. 430, where the contention was made that, if a duty, which, by the common law or by statute, one person or corporation is directed to perform, is by a subsequent statute expressly directed to be performed by another agency, in terms which necessarily import the primary performance of such duty by the new agency, the obligation of the person originally charged with the duty is wholly determined. In that case it appears that the canal company, in carrying out its project, constructed a bridge which was made necessary by its intersection of a county road, but took the position that it was relieved of the duty to repair such bridge by the operation of a statute thereafter enacted which declared that the county commissioners "shall have charge of and control over the county roads and bridges," and "may build and repair bridges and levy upon the property of the county therefor." In refusing to sustain this contention, the court reviews some of the authorities and says, at p. 219: "It is simply for the additional security and convenience of the public, that the County Commissioners are held primarily responsible for the safe condition of the bridge, and not in anywise to lessen the obligation of the Canal Company to keep the same in repair." For similar

expressions of the law, see *Dyer County* v. *Railroad, supra; Eyler* v. *County Commissioners* (1878), 49 Md. 257, 269, 272, 33 Am. Rep. 249; *State* v. *Gorham* (1854), 37 Me. 451, 461; *Pennsylvania R. Co.* v. *Borough of Irwin* (1877), 85 Pa. St. 336, 338; *City of Zanesville* v. *Fannan* (1895), 53 Ohio St. 605, 616, 42 N. E. 703, 53 Am. St. 664.

Section 27, *supra*, is to be construed, then, as imposing on the city of Indianapolis a statutory duty to make provision for the safe passage of travelers over watercourses within its limits, and as making it primarily responsible to persons injured through its failure to discharge this obligation. It did not operate, however, either expressly or by necessary implication, to relieve the owner of a private enterprise from any of the duties imposed on him by the common law, or to prevent a recovery on the part of the city for sums expended by it in discharging such an obligation in his behalf. The grant to the city of "exclusive jurisdiction" in the premises had reference only to its position as a governmental agency, while the statute as a whole in no way served to relieve the contract between Conwell and the State of such covenants and obligations, if any, as would otherwise attach by operation of law. It is necessary, then, to consider appellee's further contention that the State was under no duty to construct or repair bridges over the canal and, therefore, that its successors in title assumed no such obligation. This contention is based on a failure to distinguish between the existence of a duty and of a method to enforce its performance. As said in the case of *Coster* v. *Mayor, etc.* (1871), 43 N. Y. 399, 408: "The state, as much as one of its citizens, is subject to the fundamental law, 5. * * * . And as an abstract proposition, a liability does exist on its part to its citizen to a legal claim for damage to his property,

City of .Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

though he may be without a tribunal to which he may cite it for redress." And in *Carr* v. *State, ex rel.* (1891), 127 Ind. 204, 207, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. 624, this court said, in speaking of the duties of a state with respect to contractural obligations: "Its contracts are interpreted as the contracts of individuals are, and the law which measures individual rights and responsibilities measures, with few exceptions, those of a State whenever it enters into an ordinary business contract." It is true that the rule, universally recognized and enforced, that neither a state

6. nor the United States, in the absence of statutory provision, can be made to respond in damages for the torts of its officers or agents is based on the absence of an obligation as well as on the doctrine that the sovereign is immune from suit. But the absence of obligation in such cases rests on the further principle of the common law that the doctrine of *respondeat superior* there has no application. *Pittsburgh, etc., R. Co.* v. *Iddings* (1901), 28 Ind. App. 504, 513, 62 N. E. 112. The sovereign authority does not undertake to guarantee to any person the conduct or fidelity of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments, difficulties, and losses, which would be subversive of the public interest.

But the State, although not a corporation in the strict and subordinate use of the term, may and does act as a corporate entity in a broad sense

7. when it engages in the promotion and construction of public enterprises, in establishing and maintaining public institutions, and in binding itself generally by contract. Its acts in that capacity are subject to the same principles of fundamental law as are the acts of an individual,

292        SUPREME COURT OF INDIANA,

City of Indianapolis v. Indianapolis Water Co.—185 Ind. 277.

although, as a matter of public policy, it is immune from suit to enforce its obedience to such principles. The *cause for action* against it may exist when a *right to enforce it* has not been granted. The further contention is made, however, that as the ownership both of the canal and of the public easement to use the highways which it crossed rested in the State at the time the canal was built, it could not occupy the dual position of obligor and obligee. The question is not one of ownership, but of user.

8. When a street or highway has been dedicated to and accepted for public use, the *title* to the easement may rest in the State or its municipality but, until modified or extinguished pursuant to legislative enactment, a *right of user* accrues to the traveling public which is protected by the fundamental law and its free maintenance is required as against subsequent ways or users, whether private or public, which would otherwise limit its enjoyment. The obligation is not a personal one but attaches to the use of the obstruct-

9. ing agency and, with the transfer of title thereto, it passes as a continuing condition imposed by operation of law. True, the State, in its operation of one public enterprise, could not be compelled to remedy its obstruction of another, but that fact rests solely in its immunity from suit. The duty attaches nevertheless and becomes subject to enforcement when the ownership of the project passes into private hands. This principle finds recognition in the case of *Pennsylvania R. Co. v. Duquesne Borough, supra,* wherein it was held that, although there had been an acknowledgment by the state of its duty to build and maintain necessary public bridges across the canal which it had constructed, it could not have been compelled to discharge such duty because of its sovereign

immunity. Speaking of the position taken by the railroad company, the court said, at p. 228: "The defendants argue, that because the Act of 1835, by which the state assumes this duty, leaves it to the canal commissioners to decide whether the bridge continues to be necessary, therefore the duty was not absolute, and did not pass as one of the burdens of the ownership of the canal. This mode, however, of deciding the question of necessity, grew out of the state's immunity from suit. It could not be sued on its duty, and that there might be no failure of justice, it required the canal commissioners to judge of the necessity, and to rebuild if it existed, and their judgment was not to depend on their mere pleasure or arbitrary discretion, but on their legal discretion, founded on the facts of each case. And when the public works passed from the state into the hands of a private corporation, then the question of necessity and consequent duty became a mere question of private rights, and passed of course into the jurisdiction of the courts.

"The defendants further argue, that they stand in the place of the state, and as the state could not be coerced to rebuild, so neither can they. But the state, even though acknowledging the duty, could not be coerced, because of its character as state. The defendants having no such character, can have no such immunity. Their private character makes them subject to law, and therefore to action for breach of duty. A duty which cannot be enforced by action, because owed by the state, becomes a subject of action when transferred to private persons."

Our attention is called to the cases of *Lowrey* v. *City of Delphi* (1876), 55 Ind. 250, and *Fort Wayne, etc., Co.* v. *Board, etc.* (1899), 24 Ind. App. 514, 57 N. E. 146, as supporting the rulings of the trial

court. In the first of these cases it was held that a statutory duty rested on the city of Delphi to repair a certain bridge over the Wabash and Erie canal, and that it must respond in damages to one injured through its omission to perform that duty. The further point is made that no obligation to construct the bridge was placed on the canal owners by the statutory provision that the "trustees shall erect, construct, and keep in good repair, suitable bridges over all *State and county roads* crossing, or that may hereafter cross said Wabash and Erie Canal." (Our italics.) Acts 1847 p. 33. This interpretation of the language of the statute is clear, and in the absence of any suggestion, either in the opinion or in the record of the case, that the street in question was in use prior to the construction of the canal, we must now assume that the court did not consider it necessary to discuss the rule at common law. In the case of *Fort Wayne, etc., Co.* v. *Board, etc., supra*, the common-law rule is expressly recognized and the decision turns squarely on the point that the duty imposed by statute on the trustees of the Wabash and Erie Canal to construct bridges over State and county roads which should *thereafter* cross that canal, was a provision of the trust only and not a covenant running with the land. That decision is in harmony with the conclusions reached in this case.

Appellee's further suggestions (1) that the first and second paragraphs of complaint do not show a dedication to public use of the streets therein mentioned, and (2) that appellant is estopped now to maintain this action, are not well taken. The allegations of each paragraph are clearly sufficient to show a prior user of an established highway by the public, and a change in the form of government or of territorial

MAY TERM, 1916.    295

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

boundaries would not defeat such dedication. *Evansville, etc., R. Co.* v. *State, ex rel.* (1897), 149 Ind. 276, 279, 49 N. E. 2. And since the duty of a canal builder to construct and maintain a 12. bridge at its intersection with an existing public highway is a continuing obligation, which will last, as long as the necessity for the bridge exists, the city is not estopped from enforcing that obligation on subsequent occasions merely because it has, for a period of years, kept up and maintained the bridge without asserting its claims against the builder or his grantees. *Haines* v. *People* (1885), 19 Ill. App. 354, 358; *Woodring* v. *Forks Township* (1857), 28 Pa. St. 355, 361, 70 Am. Dec. 134; *Nuckolls County* v. *Guthrie & Co.* (1906), 76 Neb. 464, 469, 107 N. W. 779.

For the reasons above announced, we hold that the first and second paragraphs of appellant's complaint each state a cause of action at common law and that the trial court erred in sustaining demurrers thereto.

In support of their further contention that appellee is under obligation to build such bridges as are necessary to carry new streets over its canal, counsel for appellant cite and rely on a number of cases which hold that railroad companies are bound to provide adequate bridges and crossings for highways established after the railroad is built as well as for those already in existence. Among the cases which announce this rule are: *Chicago, etc., R. Co.* v. *Luddington, supra; Cincinnati, etc., R. Co.* v. *City of Connersville* (1907), 170 Ind. 316, 320, 83 N. E. 503; *Vandalia R. Co.* v. *State, ex rel.* (1905), 166 Ind. 219, 223, 76 N. E. 980, 117 Am. St. 370; *Lake Erie, etc., R. Co.* v. *Shelley* (1904), 163 Ind. 36, 41, 71 N. E. 151; *Chicago, etc., R. Co.* v. *State, ex rel.* (1902), 159 Ind. 237, 240, 64 N. E. 860; *Evans-*

296          SUPREME COURT OF INDIANA,

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

*ville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 454, 19 N. E. 310, 2 L. R. A. 450, 9 Am. St. 865; *Cleveland, etc., R. Co.* v. *Federle* (1911), 50 Ind. App. 147, 155, 98 N. E. 123; *State, ex rel.* v. *St. Paul, etc., R. Co.* (1906), 98 Minn. 380, 400, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047. The case last cited is especially relied on by appellant because of the statement contained in the opinion that this obligation "is imposed upon the railroads at common law." The Supreme Court of Minnesota considers the modern development of railroads and the dangers incident to their operation, and bases its conclusion on the ground that the common law is not a codification of exact or inflexible rules for the guidance of human conduct, but is the growth of ages and its principles, although always based on the rule of right and wrong, are influenced by new conditions of society and undergo a constant change and development in keeping with the advance of civilization. *Ketelsen* v. *Stilz* (1915), 184 Ind. 702, 111 N. E. 423.

The weight of authority, however, seems to be that "in the absence of statute a railroad company cannot be required to construct and maintain crossings where a street or highway is made across its right of way after the construction of the railroad, there being no common-law duty on the part of the railroad company in such cases to construct crossings or bridges or approaches thereto." 33 Cyc 285, and cases cited; *Northern, etc., R. Co.* v. *Mayor, etc.* (1876), 46 Md. 425, 451; *City of Chicago* v. *Pittsburgh, etc., R. Co., supra; State, ex rel.* v. *Atchison, etc., R. Co.* (1915), 95 Kan. 22, 25, 147 Pac. 801, L. R. A. 1915E, 751; *Louisville, etc., R. Co.* v. *Hopkins County* (1913), 153 Ky. 718, 156 S. W. 379; *City of Albia* v. *Chicago, etc., R. Co.* (1897), 102 Iowa 624, 628,

MAY TERM, 1916. 297

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

71 N. W. 541; *Town of O'Fallon* v. *O. & M. R. Co.* (1892), 45 Ill. App. 572, 579.

But the legislature, in the exercise of its police power, may exact that duty of railroad corporations and has done so in Indiana. §5195, cl. 5, Burns 1914, Acts 1911 p. 136. Out of this fact, and the recognized right of the public to lay out and use new streets as the need arises, the rule has developed that every railroad corporation acquires its right of way subject to the contingency that public highways may later be built or extended across the same, and subject also to the right of the State, in the exercise of its police power, thereafter to compel the railroad company to provide suitable bridges and crossings for new highways as well as for those in existence at the time its road is constructed. An examination of the Indiana railroad decisions above cited will disclose the fact that this rule has found full recognition in the legislation of this State, so that it is not important now to consider what principles of the common law would otherwise apply. It may be noted, however, that the reasons given for the conclusion reached in the Minnesota case are, in substance, the same as those which are usually adopted to sustain police legislation; that is, the need for protecting the traveling public against the risks and hazards incident to the operation of railroad trains across highways and the propriety of placing the burden of providing such protection on those who create the necessity through their use of an active, dangerous agency.

This reasoning, however, is not applicable as to canals, and particularly to those which are not used for purposes of commercial navigation. The existence and use of the canal creates no conditions which do not accompany a similar use of a natural

stream and it will not be seriously asserted that the owner of such a water course may be compelled, at his own expense, to bridge the same whenever the public authorities choose to extend a street across his property. The absence of this obligation has long been recognized in England and as early as the year 1225 it was provided by a statute which, to quote several of the English law writers, was enacted "in affirmance of the common law," that "no town or freeman shall be distrained to make bridges nor banks, but such as of old time and of right have been accustomed to make them." Hen. III, c. 15. As applied more particularly to canals the authorities are uniform that at common law "a canal proprietor is under no obligation to construct or maintain bridges at highways which were not in existence at the time of the establishment of the canal, even though such highways are laid out by duly authorized public officials." 4 R. C. L. 478; *Fort Wayne, etc., Co. v. Board, etc., supra; Board, etc. v. Fort Wayne, etc., Co., supra; City of Lowell v. Proprietors of Locks & Canals* (1843), 48 Mass. (7 Metc.) 1; *Morris Canal, etc., Co. v. State* (1853), 24 N. J. Law 62, 66; *City of Oswego v. Oswego Canal Co.* (1852), 6 N. Y. 257, 266; *Phoenixville v. Phoenix Iron Co., supra.*

As said in *Morris Canal, etc., Co. v. State, supra,* at p. 66: "The right of laying out the road across the canal being conceded, it remains to inquire whether the canal company is bound to build and maintain the bridge, or whether that duty devolves on the public. There is clearly at common law no obligation upon the company to construct or maintain the bridge. They created no nuisance at the point where the bridge is now required by the construction of the canal. No highway was in existence at that place when the canal was built, and, con-

MAY TERM, 1916.                299

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

sequently, no way was obstructed by the act of the defendants. The company did no act for which they were indictable; they created no nuisance which they were bound to abate. If the defendants are bound to construct the bridge, it must be by virtue of some obligation created by their charter."

And in *City of Oswego* v. *Oswego Canal Co., supra,* it was held that a canal rightfully in existence at the time new streets are constructed across it, must be regarded, as to such highways, as if it had been a natural stream.

No new conditions surrounding the modern use of canals are suggested by counsel and we know of no reasons which would warrant a modification or disapproval of the common-law principles relative thereto which have heretofore been announced by the courts of this and other jurisdictions. Since it is thus clear that a duty to build or repair the bridge at Twenty-ninth street did not rest on appellee at common law it remains to consider whether that obligation has been imposed by statute. It is conceded that no such statutory duty exists unless it was created by the provisions of §8696, cl. 15, *supra,* as above set out, and which appellant claims was enacted under the police power of the State. There can be no doubt that uncompensated obedience to a regulation enacted for the public safety under a proper exercise of the police power does not constitute a taking of property without due compensation, and the con-- stitutional prohibition against the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well-ordered community, nor of that general power over private property which is necessary for the

300          SUPREME COURT OF INDIANA,

City of Indianapolis *v.* Indianapolis Water Co.—185 Ind. 277.

orderly existence of. all governments. *Cincinnati, etc., R. Co.* v. *City of Connersville, supra; Chicago, etc., R. Co.* v. *Drainage Commissioners* (1906), 200 U. S. 561, 584, 26 Sup. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; *Northern Pacific R.* v. *Duluth* (1908), 208 U. S. 583, 597, 28 Sup. Ct. 341, 52 L. Ed. 630.

But, on the other hand, "powers, the exercise of which can only be justified on this specific ground, and which would otherwise be clearly prohibited by the constitution, can be such only as are so clearly necessary to the safety, comfort or well-being of society, or so imperatively required by the public. necessity, as to lead to the rational and satisfactory conclusion, that the framers of the constitution could not, as men of ordinary prudence and foresight, have intended to prohibit their exercise in the particular case, nothwithstanding the language of the prohibition would otherwise include it." *People* v. *Jackson, etc., Road Co.* (1861), 9 Mich. 284, 306.

This court has held that the State, in the statutory exercise of its police power, may require a railroad company to erect and maintain a bridge made necessary by the construction of a public drain across its right of way (*Lake Shore, etc., R. Co.* v. *Clough* [1914], 182 Ind. 178, 185, 104 N. E. 975, 105 N. E. 905), but in that case the bridge was necessary, not for drainage purposes, but for the continued operation of the railroad. The right of the State to authorize the construction of a highway over a canal cannot be doubted; but, in the absence of other circumstances which, in themselves, were referable to a proper exercise of the police power, it would be a far different matter to hold not only that the canal owner must accommodate

himself to the public improvement but that he must construct the same at his own expense.

It is clearly within the police power of the State so to regulate the methods and plans of construction to be used in the building of public bridges 16. that their safety may be assured, but no such power is involved in legislation which undertakes to provide that bridges across a natural watercourse or across a canal which existed prior to the establishment of the public highway, shall be erected at the expense of the owner of such canal or watercourse. Furthermore, it must be borne in mind that a board of public works 17. is an administrative and not a legislative body, and the grant of power contained in §8696, cl. 15, Burns 1914, *supra*, authorizes it to take such steps as are necessary to compel owners of canals and watercourses to construct and maintain bridges only where that duty is imposed on them by some other rule or provision of law. No such obligation rests on appellee, either at common law or by statute, as to streets extended across the canal since its construction and the demurrer to the third paragraph of appellant's complaint was therefore properly sustained.

Judgment reversed, with instructions to overrule appellee's demurrer to each of the first and second paragraphs of complaint and for further proceedings in accordance herewith.

NOTE.—Reported in 113 N. E. 369. Construction and operation of canals in relation to bridges, note, 61 L. R. A. 865, 9 C. J. 459; 37 Cyc 228; Ann. Cas. 1914A 550. Duty as to establishment and maintenance of bridges over canals or ditches for use of adjoining owners, note, L. R. A. 1915E 687. Duty as to bridge over ditch constructed by drainage district across highway, note, 43 L. R. A. (N. S.) 695. Liability of state for torts of its officers, 108 Am. St. 831. See under (5), (6), (7) 36 Cyc 880, 881; (8) 28 Cyc 845, 907; (9) 9 C. J. 1132; 6 Cyc 272.